**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**KRIEGER–RAGSDALE & COMPANY, Inc., Respondent.**

**No. 15926.**

United States Court of Appeals Seventh Circuit.

May 25, 1967.

Rehearing Denied Aug. 8, 1967.

---

Marcel Mallet-Prevost, Asst. Gen. Counsel, Peter M. Giesey, Atty., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, George B. Driesen, Peter M. Giesey, Attys., N. L. R. B., Washington, D. C., for petitioner.

Richard F. Watt, Eugene Cotton, Drew S. Days III, Cotton, Watt, Jones & King, Chicago, Ill., for intervenor.

Arthur R. Donovan, Joseph A. Yocum, Evansville, Ind., Martin J. Burns, Chicago, Ill., Harry P. Dees, Joseph A. Yocum, Evansville, Ind., Kahn, Dees, Donovan & Kahn, Evansville, Ind., of counsel, for respondent.

Before HASTINGS, Chief Judge, and KNOCH and FAIRCHILD, Circuit Judges.

HASTINGS, Chief Judge.

The National Labor Relations Board has petitioned this court for enforcement of its order directing Krieger-Ragsdale & Company, Inc., of Evansville, Indiana, to cease and desist from refusing to bargain collectively with the International Brotherhood of Bookbinders, AFL-CIO, and with Local 73 L, Lithographers and Photoengravers International Union, AFL-CIO.[1] The decision and order of the Board, upholding the trial examiner's findings of 8(a) (5) and 8(a) (1) violations of the Labor Management Relations Act, 29 U.S.C.A. § 158(a) (5) and (1), is reported at 159 NLRB No. 53.

In May, 1965, the unions involved in this case petitioned the Board for certification as bargaining representatives of the company's employees in two different units, a lithographic unit and a bindery, shipping and receiving unit. A hearing was held, and testimony taken, with respect to the propriety of the suggested units.

Upon the record of the hearing, the Board's regional director found the two separate units appropriate for bargaining and directed that an election be held for the employees deemed eligible. A number of employees were not found eligible for either unit and did not participate in the election. The company filed a request for review with the Board, which the Board denied.

On September 2, 1965, a representation election was held. In the lithographic unit, the employees voted 5–4 in favor of the union; in the bindery unit, the vote was 9–4 in favor. Thereafter the unions were certified as bargaining representatives.

In October and November, the unions filed charges that the company had refused to bargain. Complaints issued, and in its answers the company admitted its refusal to bargain, but challenged the appropriateness of the units and the propriety of the certification of the unions.

The Board's general counsel moved for summary judgment, which was granted. As stated, the Board adopted the report of the trial examiner.

On this petition for enforcement, the company reasserts its challenge to the unit determinations.

The Board takes the position that it has discretion in unit determinations. The company, on the other hand, contends that Board unit determinations are subject to review under the substantial evidence rule. The difference between the opposing positions is not trivial, for the result on review may well turn out to be different under the two standards. Unfortunately, the case law, which derives from Packard Motor Car Co. v. National Labor Relations Board, 330 U.S. 485, 67 S.Ct. 789, 91 L.Ed. 1040 (1947), is not clear, for both standards are stated to apply generally, although it is not made explicit how each is to enter into consideration on review.

Section 9(b) of the Labor Management Relations Act, 29 U.S.C.A. § 159(b), gives the Board discretion to determine appropriate bargaining units; and the Board's informed exercise of discretion is rarely to be disturbed. E. g., Packard, supra; N. L. R. B. v. Weyerhaeuser Company, 7 Cir., 276 F.2d 865 (1960). The same cases state that substantial evidence is also an appplicable standard of review.

These standards, however, are not merely alternative formulations of a single standard. They differ in substance as well as form, and in the instant case, it is necessary to distinguish them in order to express clearly the functions of this court on review of unit determinations.

The discretion which the Board is entitled to exercise lies in the area of establishing, case by case, those facts

---

1. The Lithographers were permitted to intervene in the petition for enforcement; they filed a brief and participated in oral argument.

which it deems generally relevant, but not conclusive, in the drawing of inferences. The discretion is exercised when the Board finds some set of relevant facts determinative in a particular case. Cf. Jaffe, Judicial Control of Administrative Action 555–56 (1965). The determination is discretionary because the relevancy and import of similar facts may shift from case to case.

 Unit determinations fall into this category of discretionary decisions. Unit determinations are not findings of fact, but judgments upon the facts in accordance with varying guidelines of relevancy or rules of inference based upon experience and the purpose of the statute being administered. Because the exercise of discretion is a judgment and application of relevancy in a particular case, prior Board unit determinations in other cases have precedential value only in the sense that they disclose facts the Board has previously considered relevant.

 The function of the substantial evidence rule in Board unit determinations is to examine the adequacy of the facts as found, not to test the judgment upon them. In the instant case, the substantial evidence standard does not have controlling application, for there is no actual contest over basic facts. The controversy relates essentially to the judgment on the facts. Our function, therefore, is to review the Board's exercise of discretion and decide whether the Board's unit determinations were reasonable, as applied to the facts.

A general policy of the Board appears to be to sever lithographic employees when the differences in skill and duties between lithographic and other types of printing employees is so great as to cause the lithographers to constitute a distinct group possessing a community of interest. Con. P. Curran Printing Co., 57 NLRB 185, 188–89 (1944). This policy has been approved by the courts. N. L. R. B. v. Weyerhaeuser, 7 Cir., 276 F.2d 865 (1960). However, where differences between skill and duties are small, where

work is interchangeable and interchanged, or where craft considerations are not important, the Board has refused to create a separate lithographic unit. Pacific Press, Inc., 66 NLRB 458 (1946); Pacific Coast Assn., of Pulp & Paper Manufacturers, 130 NLRB 1031 (1961); Weyerhaeuser Company, 142 NLRB 1169 (1963).

While the lithographic work done in the company's plant is not complex, the record discloses that operation of the machines in that department required a training period lasting from one to three months. This is far short of craft training, but not insignificant as an indicaton of a possible community of interest, particularly where employees in other departments do not have such training.

In addition to special training, it appears that no lithographic employee worked outside his department more than one hundred hours or approximately two and one-half weeks in a year.

The Board also found appropriate a separate unit of bindery and shipping department employees. Together with the similarity of their work, these employees had a distinct identity in the plant, interchangeably operated the bindery machines, worked in the same area of the plant, did not work appreciably outside the department and were supervised by the same foreman.

The company contends that the duties and activities of its employees are not such as to justify the creation of separate units. It argues that its operation is simple, so simple that special skill, training, or experience is not required of its employees.

██ While simplicity of operation is a matter which may be properly taken into consideration in determining community of interest, we do not find unreasonable the Board's position that it is not determinative. Involvement in the same productive processes, if they are sufficiently distinct from others in the plant, may create a sufficient community of interest, when considered with other factors, to justify a separate bargaining unit.

In the same vein, the company urges that the record discloses a ready interchange of skills and abilities within its entire work force. The record, however, does not quite bear out this last contention. It shows, with respect to the lithographic employees, that the three employees from other departments who did work in the lithographic department had either been originally trained in lithographic work or merely assisted there for a short time in the operation of a press. This evidence seems rather to demonstrate the real specialty involved in lithographic work.

The company further contends that countering the factors tending to create a community of interest, working conditions are similar for all of its employees and that its physical facilities and production processes are integrated.

To the degree that these factors may disclose that the interest of the employees throughout the plant was similar or identical, they are relevant to unit determinations. However, the record does not disclose an integration of plant and production processes so great as to show that the employees in the different departments had an undifferentiated congruence of interest. Given the measure of Board discretion in unit determination, we are unable to conclude that the Board's determinations were unreasonable or that they were arbitrarily and capriciously made.

The company's final contention, that the only appropriate bargaining unit at its plant would have been all of its production and maintenance employees, is simply a variation in wording of its other contentions. It is asserted that the effective result of the Board's unit determinations is the disenfranchisement of those employees not falling into either unit. This argument falsely assumes that only a unit comprising the employees of the entire plant would have been proper under the facts.

Notwithstanding our conclusions as to the propriety of the unit determinations, we have considered the contentions regarding each employee allegedly disenfranchised. We conclude that the Board did not act arbitrarily in excluding these employees.

The order of the Board under review will be enforced.

Enforcement ordered.