SMITH STEEL WORKERS, Directly Af-
filiated Local Union 19806, AFL–CIO,
Plaintiff-Appellant,

v.

A. O. SMITH CORPORATION,
Defendant-Appellee,

and

National Labor Relations Board, Inter-
venor-Defendant-Appellee.

SMITH STEEL WORKERS, Directly Af-
filiated Local Union 19806, AFL–CIO,
Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent,

and

A. O. Smith Corporation, Intervenor-
Respondent.

Nos. 17309, 17436.

United States Court of Appeals
Seventh Circuit.

Dec. 23, 1969.

1

Kenneth R. Loebel, Goldberg, Previant & Uelmen, Milwaukee, Wis., for petitioner-appellant, Smith Steel Workers.

Herbert P. Wiedemann, John W. Brahm, Milwaukee, Wis., for A. O. Smith Corp., defendant-appellee.

Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Robert A. Giannasi, Nan C. Bases, Attys., N. L. R. B., Washington, D. C., William C. Humphrey, N. L. R. B., Milwaukee, Wis., for N. L. R. B.

Before HASTINGS, Senior Circuit Judge, and KILEY and CUMMINGS, Circuit Judges.

CUMMINGS, Circuit Judge.

One of these companion cases is an appeal by Smith Steel Workers, Directly Affiliated Local Union 19806, AFL–CIO (the "Union"), from the district court's judgment dismissing its suit seeking direct review of a unit clarification order of the National Labor Relations Board and seeking arbitration under a collective bargaining agreement with A. O. Smith Corporation (the "Company"). The other case is the Union's petition to review a subsequent order of the Board finding that the Union engaged in an unfair labor practice by insisting that the Company recognize it as the bargaining agent for employees whom the Board had found were represented by another union.

The Company manufactures automobile frames and other metal products at its Milwaukee, Wisconsin, plant. In 1946, the Union was certified by the Board as the bargaining representative for all "production, maintenance and office employees" at that plant not included in other units or not specifically excluded in the certification. Another union, the predecessor of the Technical Engineers Association (the "TEA"), was simultaneously certified as the bargaining representative of various employees of the Company, including laboratory technicians, laboratory assistants A and laboratory assistants B. 70 NLRB 1288.

In 1966, the Company and TEA entered into an agreement covering the employees in the TEA unit, while the Company and the Union entered into a contract covering the employees in its certified unit. Both contracts were to expire on July 31, 1968. When these contracts were negotiated, the Union represented 4500 employees and TEA represented 340 employees.

In 1966, TEA filed a grievance with the Company, claiming that certain employees covered by the Union's contract were performing work which was to be performed by employees represented by TEA. The Union agreed to participate in the arbitration of the grievance. The Company, the Union and TEA agreed upon an arbitrator, and the arbitration hearing commenced on January 4, 1967. At the start of the hearing, the company explained that it had filed two unit clarification petitions with the Labor Board on December 30, 1966. This was pursuant to the procedure described in Carey v. Westinghouse Corp., 375 U.S. 261, 267–268, 84 S.Ct. 401, 11 L.Ed.2d 320. Subsequently, the Union and TEA also filed petitions for clarification, in effect contending that their respective 1946 units should be clarified to include all non-supervisory employees in the Com-

pany's automotive laboratory. Consequently, the arbitration proceedings were postponed until the Labor Board could clarify the certified units pursuant to Section 9(c) (1) of the National Labor Relations Act (29 U.S.C. § 159(c) (1)) and Section 102.60(b) of the Board's Rules and Regulations (29 C.F.R. § 102.60(b)). Before the Board, the Union sought to represent 10 Technicians I (formerly laboratory assistants A) being represented by the TEA. In turn, the TEA sought to represent the experimental workers being represented by the Union. On July 25, 1967, the Board issued its order clarifying the certifications, concluding that the experimental workers A and B were included in the TEA unit and excluded from the Union's unit. 166 NLRB No. 98. The Board refused to include Technicians I in the Union's unit.

In August 1967, despite the Board's ruling, the Union notified the Company that it expected the Company to continue to recognize the Union as the representative of the experimental workers A and B. The Company replied that it was bound by the Board's unit clarification order to recognize TEA as their exclusive bargaining representative. The Union recommended that the matter be submitted to an arbitrator. In September 1967, in the absence of a reply from the Company, the Union filed its action in the district court to set aside the unit clarification order and compel arbitration. The Board intervened to protect its jurisdiction over issues of representation, and on June 28, 1968, the district court dismissed the action on the ground that it lacked jurisdiction to set aside the Board's decision. The court also held that under Section 301(a) of the National Labor Relations Act (29 U.S.C. § 185(a)), it could not compel the Company to arbitrate the representation question which had already been determined by the Board adversely to the Union in the 1967 unit clarification order.

In the interim, the Company had filed unfair labor practice charges with the Board, alleging that the Union's actions in continuing to seek representation of the experimental workers violated the National Labor Relations Act. On January 30, 1968, a trial examiner concluded that the Union violated Section 8(b) (3) of the Act (29 U.S.C. § 158(b) (3)) "by pressing its demand with Smith for continuing recognition and bargaining for a unit which the Board found to be inappropriate in its Unit Clarification decision." In January 1969, the Board affirmed the recommendations of the trial examiner in the unfair labor practice proceeding and ordered the Union to cease and desist from insisting upon bargaining and arbitration of the dispute. The Board included the posting of notices in the relief granted. 174 NLRB No. 41.

*The District Court's Order*

We agree that the district court properly denied the Union's motion for summary judgment and properly granted summary judgment in favor of the Company and the Board. Federal district courts normally lack jurisdiction to review orders of the National Labor Relations Board. Boire v. Greyhound Corp., 376 U.S. 473, 84 S.Ct. 894, 11 L. Ed.2d 849; Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50, 58 S.Ct. 459, 82 L.Ed. 638; Chicago Automobile Trade Association v. Madden, 328 F.2d 766, 768 (7th Cir. 1964). This is true of Board orders in certification proceedings. They are not deemed to be "final orders" and are subject to review only upon a subsequent unfair labor practice order arising from the disregard of the prior Board order. Boire v. Greyhound Corp., *supra*, 376 U.S. at 476–477, 84 S. Ct. 894; McCulloch v. Libbey-Owens-Ford Glass Co., 131 U.S.App.D.C. 190, 403 F.2d 916 (1968), certiorari denied, 393 U.S. 1016, 89 S.Ct. 618, 21 L.Ed.2d 560; Groendyke Transport, Inc. v. Davis, 406 F.2d 1158, 1163–1164 (5th Cir. 1969). Before the district court, the Union argued that the Board's representation order was an arbitrary exercise of power exceeding its authority. The Union has not pressed this point on appeal and we consider it to have been

abandoned. In any event, the Board's action in clarifying the appropriate unit did not constitute such an abuse of power as warrants action by the district court. Cf. Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210; McCulloch v. Sociedad Nacional de Marineros de Honduras, 372 U.S. 10, 17, 83 S. Ct. 671, 9 L.Ed.2d 547; Fay v. Douds, 172 F.2d 720 (2d Cir. 1949).

 The district court was also correct in refusing to compel arbitration of the unit representation issue after its determination by the Board. Arbitration provides an alternative means of resolving disputes over the appropriate representational unit, but it does not control the Board in subsequent proceedings. Carey v. Westinghouse Electric Corp., 375 U.S. 261, 268–272, 84 S.Ct. 401, 11 L.Ed.2d 320. In this case no arbiter's award existed to which the Board could defer. All the parties involved in the dispute joined in petitioning the Board for clarification of the certificates and the arbitration hearing was accordingly postponed. The Board was not bound to delay its consideration of the issue under these circumstances. The Board's 1967 determination of the appropriate units fully disposed of the question. It defined the lawful limits of coverage of the contract which the Union sought to have enforced under Section 301(a) of the Labor Management Relations Act (29 U.S.C. § 185(a)). As in Retail Clerks International Ass'n v. Montgomery Ward & Co., 316 F.2d 754, 757 (7th Cir. 1963), the Board's order deprived the Union of any right to recognition as the representative of the laboratory technicians and experimental workers. See also McGuire v. Humble Oil & Refining Company, 355 F.2d 352, 357–358 (2d Cir. 1966), certiorari denied, 384 U.S. 988, 86 S.Ct. 1889, 16 L. Ed.2d 1004. The court could compel neither arbitration nor enforce any arbiter's award in conflict with the Board's order. National Licorice Co. v. National Labor Relations Board, 309 U.S. 350, 365, 60 S.Ct. 569, 84 L.Ed. 799.

*The Unfair Labor Practice Order*

 No specific Section of the National Labor Relations Act expressly prohibits, as an unfair labor practice, attempts by a union to bargain for an inappropriate unit of employees. However, considerations of the policy of the Act have led the Board and courts to the conclusion that union demands for recognition as representatives of employees previously placed in a different unit by the Board violates the union's obligation to bargain collectively. Douds v. International Longshoremen's Ass'n., 241 F. 2d 278, 281–283 (2d Cir. 1957); District 50, United Mine Workers of America (Central Soya Co.), 142 NLRB 930, 939 (1963); International Longshoremen's Ass'n. (Sea-Land Service, Inc.), 159 NLRB 382, 391–392 (1966); International Brotherhood of Electrical Workers, etc. (Tex-lite, Inc.), 119 NLRB 1792, 1796 (1958); see also United States Pipe and Foundry Company v. National Labor Relations Board, 298 F. 2d 873, 877 (5th Cir. 1962); National Labor Relations Board v. Local 19, International Brotherhood of Longshoremen, 286 F.2d 661, 663–664 (7th Cir. 1961). The Union contends that those cases are inapplicable since they involved negotiations for new contracts with which the union demands interfered. Here the Company and the Union were bound by an existing contract to remain in effect until July 31, 1968, and there was no indication of any actual interference with the bargaining process. Nevertheless, we do not accept such a narrow interpretation of the Union's duty to bargain under Section 8(b) (3).[1]

1. Section 8(b) (3) provides:
"It shall be an unfair labor practice for a labor organization or its agents—
 * * * * *

"(3) to refuse to bargain collectively with an employer, provided it is the representative of his employees subject to the provisions of section 9(a);" (29 U.S.C. § 158(b) (3)).

 The duties imposed on employers and unions by the National Labor Relations Act are complementary and must be construed in harmony with one another. In International Ladies' Garment Workers Union, AFL–CIO v. National Labor Relations Board, 366 U. S. 731, 81 S.Ct. 1603, 6 L.Ed.2d 762, the Court approved the conclusion that a union's duties under Section 8(b) (1) (A) were comparable to those placed upon the employer by 8(a) (1) of the Act (29 U.S.C. §§ 158(b) (1) (A) and 158(a) (1)):

"It was the intent of Congress to impose upon unions the same restrictions which the Wagner Act imposed on employers with respect to violations of employee rights." 366 U.S. at 738,[2] 81 S.Ct. at 1608.

The same is true of the bargaining responsibilities created by Sections 8(a) (5) and 8(b) (3). See Douds v. International Longshoremen's Ass'n, 241 F.2d 278, 281–282 (2d Cir. 1957). Sections 8(a) (1) and 8(a) (5) (29 U.S.C. § 158(a) (1) and (5)) require the employer to bargain only with the proper representative of appropriate bargaining units. May Department Stores Co. v. National Labor Relations Board, 326 U. S. 376, 383, 66 S.Ct. 203, 90 L.Ed. 145; National Labor Relations Board v. Jones & Laughlin Steel Corporation, 301 U.S. 1, 44, 57 S.Ct. 615, 81 L.Ed. 893. This is true even though the employer had previously bound himself by contract to bargain with an inappropriate representative. National Licorice Co. v. National Labor Relations Board, 309 U.S. 350, 365, 60 S.Ct. 569, 84 L.Ed. 799; Modine Mfg. Co. v. Grand Lodge Int'l Ass'n of Machinists, 216 F.2d 326, 329 (6th Cir. 1954); McGuire v. Humble Oil & Refining Company, 355 F.2d 352, 358 (2d Cir. 1966). The fact that the employer's failure to bargain with the appropriate representative occurs as a result of a representational dispute between opposing unions does not preclude a violation of his Section 8(a) (5) duties. See Carey v. Westinghouse Electric Corp., 375 U.S. 261, 267, 84 S.Ct. 401, 11 L.Ed.2d 320. The employer's duties are in turn complemented by obligations placed upon the union seeking recognition for collective bargaining purposes. The employer's obligation to recognize only the representative of the appropriate unit must be matched by a comparable duty of the union to demand recognition only where it is the appropriate representative of the employees involved. Therefore, once the Board has determined that the union is not the correct representative of those employees, it is under a duty to refrain from demanding continued recognition as their representative. Where the Board's determination is correct, subsequent insistence upon recognition by the union violates Section 8(b) (3) and constitutes an unfair labor practice.

 The Union's duty to bargain in good faith is not confined to negotiations for a new collective bargaining agreement. It continues during the term of the existing agreement to the same extent that the employer's duty continues under Section 8(a) (5) (29 U.S.C. § 158(a) (5)). See Union News Company v. Hildreth, 295 F.2d 658, 664–665 (6th Cir. 1961); Cox, The Duty to Bargain Collectively During the Term of an Existing Agreement, 63 Harv.L. Rev. 1097 (1950); cf. National Labor Relations Board v. Sands Mfg. Co., 306 U.S. 332, 342, 59 S.Ct. 508, 83 L.Ed. 682; Rapid Roller Co. v. National Labor Relations Board, 126 F.2d 452, 459 (7th Cir. 1942). The impropriety of the Union's demand for recognition as representative of an inappropriate unit was not altered by the absence of

2. We need not decide whether the Union's insistence upon recognition in this case constituted a restraint upon the exercise of employees' Section 7 rights in violation of Section 8(b) (1) (A) and 8 (b) (2) as charged by the General Counsel's complaint before the Board. The trial examiner and Board concluded that only Section 8(b) (3) had been violated. No contention has been pressed before us concerning those Sections.

current negotiations for any new bargaining agreement. The continuing relationship of good faith bargaining which is the goal of the Act could only be undermined by the Union's continued insistence on representing the experimental workers. Inevitably, this would adversely affect the bargaining relationships between the Company and both the Union and TEA, the proper representative of the disputed employees according to the Board's unit clarification order.

The procedural scheme of the Act also points to the conclusion that review and enforcement of the Board's unit clarification order are available through an unfair labor practice proceeding instituted by the employer under Section 8(b) (3). The unions and an employer caught in the middle of a representational dispute may petition the Board under Section 9(c) (1) (29 U.S.C. § 159(c) (1)) to obtain a clarification of the unions' certificates on the question of the appropriate units represented by each. Carey v. Westinghouse Electric Corp., 375 U.S. 261, 266–267, 84 S. Ct. 401, 11 L.Ed.2d 320. Like other determinations by the Board pursuant to Section 9(c), clarification orders are subject to review only as they provide the bases for findings of unfair labor practice. See Boire v. Greyhound Corp., 376 U.S. 473, 476–477, 84 S.Ct. 894, 11 L.Ed.2d 849. In light of the complementary duty imposed upon the Union by the Board's clarification order, it would not be fair to require the employer to remain passive in the face of improper union demands for recognition. The Union's demand for recognition in the face of that order, and the Company's refusal to recognize the Union, provided the grounds for unfair labor practice actions which could be instituted by the Union under Section 8(a) (5) or by the Company under Section 8(b) (3) (29 U. S.C. §§ 158(a) (5) and 158(b) (3)). Moreover, the unit clarification proce-

dure is designed to present an alternative to an unfair labor practice charge as a means for obtaining an official determination of the correct bargaining units. It provides a method for clarifying the correct course of conduct for the various parties with the minimal disruption of orderly bargaining and the conduct of business which would result from continued conflict between opposing unions. Disruption should not be increased by unnecessarily compelling the Union to strike in violation of Section 8(b) (7) (29 U.S.C. § 158(b) (7)) in order to obtain review of the Board's order.[3] Such a result would undermine the value of the clarification petition as an alternative procedure and contradict the purpose of the Act to further industrial peace and harmonious labor relations.

The Union also urges that under Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580, and Drake Bakeries v. Bakery Workers, 370 U.S. 254, 82 S.Ct. 1346, 8 L.Ed.2d 474, it was required to demand arbitration as a necessary precondition to commencing its Section 301(a) action for enforcement of its bargaining agreement. We agree that the filing of a suit under Section 301(a) may not be relied upon to support the conclusion that an unfair labor practice has occurred. Local Union No. 48 of Sheet Metal Workers Int'l Ass'n v. Hardy Corp., 332 F.2d 682 (5th Cir. 1964); Clyde Taylor Company, 127 NLRB 103, 109 (1960). Likewise, steps taken to exhaust contract grievance procedures as a prerequisite to a suit undertaken in good faith may not be made the basis for an unfair labor practice finding by the Board. In the present case, however, the Board based its critical conclusion, not upon the Union's attempt to exhaust its contract grievance procedures, but upon its "pressing its demand with Smith for continued recognition and bargaining

---

3. Compare the procedures involved in a work assignment dispute. There no Board action may be taken at all until a strike has taken place. 29 U.S.C. § 158

(b) (4) (D); see Carey v. Westinghouse Electric Corp., 375 U.S. 261, 263–264, 84 S.Ct. 401, 11 L.Ed.2d 320.

for a unit which the Board found to be inappropriate in its Unit Clarification decision." 174 NLRB No. 41. That alone was a sufficient basis for the Board's conclusion. In addition, the Board's unit clarification order precluded any recourse by the Union to arbitration or other grievance procedures. As a result of that order, no contractual issues existed which could be arbitrated or settled by bargaining. Compare Retail Clerks International Ass'n v. Montgomery Ward & Co., 316 F.2d 754, 757 (7th Cir. 1963). The Union's contention that the dispute was jurisdictional rather than representational could only be presented to the Board as a defense in an unfair labor practice action and could not be used as the basis for a collateral attack upon the Board's clarification order in the district court.[4]

### The Board's Affirmative Relief

The Board ordered the Union to cease and desist from continuing to demand recognition as representative of the disputed employees. In addition, the Board adopted the trial examiner's recommendation of affirmative action to be taken by the Union. This required the Union to post a prescribed notice at its business office and meeting hall for 60 days, to mail the Board's regional director 30 copies of the notice for posting on the Company's bulletin boards, and to notify the regional director of steps taken by the Union to comply with the Board's order. We do not feel that in this case the posting of notices and other affirmative relief was appropriate.

It is well established that posting orders may be issued by the Board as affirmative relief where necessary to effectuate the policies of the Act. Enforcement is not, however, automatic. Courts have modified posting orders issued by the Board on several occasions in order to conform the relief to the appropriate goals of the statute. Cf. Reliance Mfg. Co. v. National Labor Relations Board, 125 F.2d 311, 322 (7th Cir. 1942); W. T. Rawleigh Co. v. National Labor Relations Board, 190 F.2d 832, 837 (7th Cir. 1951); News Printing Co. v. National Labor Relations Board, 98 U.S.App.D.C. 14, 231 F.2d 767, 772 (1956). In this instance, we see no remedial value to this aspect of the order. It was not needed to correct any erroneous and harmful information which might have been transmitted to any of the other interested parties or the Company's employees. The violation was not so extreme as to warrant such relief, and it was unnecessary to protect the interests of the Company or TEA. We have been shown no reason why its effect should not be considered purely punitive in this case and therefore improper. Cf. Local 60, United Brotherhood of Carpenters v. National Labor Relations Board, 365 U.S. 651, 655, 81 S.Ct. 875, 6 L.Ed.2d 1, and on remand, N. L. R. B. v. Local 60, United Brotherhood of Carpenters, 291 F.2d 214, 215 (7th Cir. 1961); J. P. Stevens Co. v. National Labor Relations Board, 380 F.2d 292, 304–305 (2d Cir. 1967), certiorari denied, 389 U.S. 1005, 88 S.Ct. 564, 19 L.Ed.2d 600. That portion of the order will not be enforced.

### The Board's Unit Clarification Order

Finally, we must consider the correctness of the Board's unit clarification order. If that order is invalid, the Board's finding of an unfair labor practice must fall.

At the heart of the present controversy lies the question whether the nature of the dispute was representational, as the Board determined, or jurisdictional as the Union now argues. If the dispute was concerned solely with work assignment matters, the Board lacked the power to intervene until permitted to do so by Section 10(k) (29 U.S.C. § 160(k)) in order to resolve a strike or threat of a strike in violation of Section 8(b) (4) (D) (29 U.S.C. § 158(b) (4) (D)). In

---

4. We do not reach the question whether the Union's action in filing a petition for unit clarification by the Board constituted a waiver of any subsequent contention that the dispute was jurisdictional rather than representational.

that case, the parties would be thrown upon their own resources, and continued bargaining and arbitration would be appropriate. Cf. Carey v. Westinghouse Electric Corp., 375 U.S. 261, 263–264, 84 S.Ct. 401, 11 L.Ed.2d 320.

In the present case, we are convinced that the Board's determination that the dispute was representational was correct. In the unit clarification proceeding, there was no question of any union's attempt to obtain additional work for its members. Rather, the dispute centered upon the appropriate bargaining unit to which the technicians and experimental workers belonged. See Carey v. Westinghouse Electric Corp., 375 U.S. 261, 263, 268–269, 84 S.Ct. 401, 11 L.Ed.2d 320. Moreover, this was the manner in which the parties placed the controversy before the Board in their petitions for clarification of certificates. The question of the proper nature of the dispute before the Board was not even raised until the unit clarification decision had been rendered.

Section 9(b) invests the Board with wide discretion to determine the appropriate bargaining unit. Packard Motor Co. v. National Labor Relations Board, 330 U.S. 485, 491, 67 S.Ct. 789, 91 L.Ed. 1040; National Labor Relations Board v. Weyerhaeuser Company, 276 F.2d 865 (7th Cir. 1960); National Labor Relations Board v. Krieger-Ragsdale & Company, 379 F.2d 517, 519 (7th Cir. 1967). In any given case, a variety of different bargaining units may be appropriate, and review of the Board's selection is confined to the propriety of the exercise of its discretion. Mueller Brass Co. v. National Labor Relations Board, 86 U.S.App.D.C. 153, 180 F.2d 402, 405 (1950); National Labor Relations Board v. Western and Southern Life Insurance Company, 391 F.2d 119, 122 (3d Cir. 1968). Its choice may not be set aside unless it is arbitrary or capricious. Cf. National Labor Relations Board v. Waukesha Lime & Stone Co., 343 F.2d 504, 507 (7th Cir. 1965). It cannot be set aside on the basis that an-

other unit might be more appropriate, but only where it is clear that the Board's decision approved an inappropriate unit. Banco Credito y Ahorro Ponceno v. National Labor Relations Board, 390 F.2d 110, 112 (1st Cir. 1968). The finding reached in the present case therefore must be sustained if supported by substantial evidence on the record considered as a whole. Illinois State Journal-Register, Inc. v. National Labor Relations Board, 412 F.2d 37 (7th Cir. 1969); National Labor Relations Board v. Krieger-Ragsdale & Company, 379 F.2d 517, 519 (7th Cir. 1967). We are satisfied that ample evidence exists to justify the Board's conclusion.

Numerous factors may be considered by the Board in determining the boundaries of an appropriate unit. The Board seeks homogeneous, identifiable and distinct units. National Labor Relations Board v. Glenn Raven Knitting Mills, 235 F.2d 413 (4th Cir. 1956); National Labor Relations Board v. Moss Amber Mfg. Co., 264 F.2d 107 (9th Cir. 1959); Metropolitan Life Insurance Co. v. National Labor Relations Board, 328 F.2d 820, 824 (3d Cir. 1964). The previous history of bargaining in the firm and the industry is also relevant. See International Association of Tool Craftsmen v. Leedom, 107 U.S.App.D.C. 268, 276 F.2d 514, 516 (1960). The relationship between the proposed unit and the employer's business organization, as well as the similarity of jobs and functions performed by the employees, is important. Pittsburgh Plate Glass Co. v. National Labor Relations Board, 313 U.S. 146, 61 S.Ct. 908, 85 L.Ed. 1251; Metropolitan Life Insurance Co. v. National Labor Relations Board, 328 F.2d 820, 825 (3d Cir. 1964). In addition, the general community of interest of the employees carries substantial weight in defining the appropriate unit. Texas Pipe Line Company v. National Labor Relations Board, 296 F.2d 208 (5th Cir. 1961); see also Foreman & Clark, Inc. v. National Labor Relations Board, 215 F.2d 396, 406 (9th Cir. 1954).

In the instant case, the Board found that the Company reactivated its pre-World War II automotive laboratory in August 1945. Prototypes of experimental vehicles and their components were produced and tested there by the Company's automotive division. When the Board issued certifications to TEA's predecessor and to the Union in 1946, the laboratory employed only two junior designers and two laboratory assistants, all of whom were represented by TEA's predecessor and were part of its certified unit.

Between 1946 and 1951, the Company temporarily assigned certain sample shop employees, represented by the Union and by the International Association of Machinists, District No. 10, to the laboratory. They functioned as helpers to the laboratory assistants represented by TEA's predecessor. In 1951, the Company expanded the permanent automotive laboratory complement by adding five employees from its sample shop. Four of these were represented by the Union, and the other by the International Association of Machinists. They performed functions previously handled by laboratory assistants who were represented as part of the TEA unit. After their transfer, however, only one of these five was classified as a laboratory assistant and represented by TEA. The other four remained in the Union's unit and were known as experimental workers.

■ The Board found that at the time of the 1967 hearing, the content of the job classifications remained essentially the same as at the time of their creation, despite the general upgrading of skills resulting from technological advances. There were Technicians I (top grade), formerly known as laboratory assistants A. These men were responsible for the technical test projects in the automotive laboratory and have consistently been represented by TEA and its predecessor. The Company also employed experimental workers A who assisted Technicians I, and experimental workers B who performed routine testing tasks under the direction of Technicians I and experimental workers A. The gradation among these groups represented differing degrees of skill, experience and tenure. The Board concluded that all three categories were laboratory assistants performing the same functions as performed by "laboratory assistants" within the 1946 certification of TEA's predecessor. All operated under the laboratory-supervisor foreman and the engineering department. Their work demanded cooperation in the accomplishment of the same projects at the same location. The fact that the employees now combined in a single TEA unit had previously been adequately represented by different unions does not upset the correctness of the Board's decision. Cf. Mueller Brass Co. v. National Labor Relations Board, 86 U.S. App.D.C. 153, 180 F.2d 402, 405 (1950). There was sufficient community of interest among them in 1967 to warrant the Board's clarifying the TEA's unit to include experimental workers A and B and to refuse to clarify the Union's unit to include Technicians I. See Kalamazoo Paper Box Corp., 136 NLRB 134 (1962). No cogent reason has been presented in favor of upsetting this unit determination. The unit clarification order was neither arbitrary nor capricious and was supported by substantial evidence.

■ The Union finally contends that the Board's unit clarification order, even if correct, could not affect its right to continue to represent the experimental workers under its collective bargaining agreement which continued in effect through July 1968. This contention, however, is based on the misconception that the contract could continue to cover employees in an inappropriate unit. The Union lost its right to represent the five experimental workers through the unit clarification order of July 25, 1967. At that time, its right to recognition as bargaining agent for those employees ceased. Retail Clerks v. Montgomery Ward, 316 F.2d 754, 757 (7th Cir. 1963); cf. Machinery, Scrap Iron, etc. v.

Madden, 343 F.2d 497, 500 (7th Cir. 1964), certiorari denied, 382 U.S. 822, 86 S.Ct. 53, 15 L.Ed.2d 69.[5] The purpose of the unit clarification proceeding was to remove friction attendant on having the laboratory employees represented by two unions. In order to resolve that problem with dispatch, the Board did not abuse its discretion in making its order effective before the expiration of the collective bargaining agreement then in effect between the Company and the Union.

Since there is no contention that other matters remained to be dealt with by arbitration which were not disposed of by the Board, the decision of the district court is affirmed. The petition to set aside the order of the Board is denied and the cross-petition for enforcement is granted with respect to the cease and desist portion of the Board's order.[6]

5. Fender Musical Instruments, 175 NLRB No. 144, 71 LRRM 1083 (May, 1969), relied upon by the Union, is consistent with this result. There the Board's decision was based upon the peculiar policy relating to representation elections held near the end of a contract in which case, as the Board stated, all alterations in the status quo "are keyed to the contract terminal date." The Board expressly distinguished the thrust of such a procedure from the results of a deauthoriza-tion election and carefully pointed out that its decision did not affect the rights and duties of the parties with respect to any succeeding collective bargaining agreement.

6. In reaching this decision, the Court has honored the Union's request not to consider matters that are not part of the certified record. We have also considered the other arguments presented by the Union and have concluded that they do not affect the result.