**W. F. HALL PRINTING COMPANY, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent,**

and

**Chicago Local No. 245, Graphic Arts International Union, AFL–CIO, Intervenor.**

No. 75–2043.

United States Court of Appeals, Seventh Circuit.

Argued April 27, 1976.

Decided Sept. 1, 1976.

Stuart Bernstein, Michael F. Rosenblum, Chicago, Ill., for petitioner.

Robert H. Nichols, Chicago, Ill., for intervenor.

Elliott Moore, Deputy Assoc. Gen. Counsel, Aileen Armstrong, James M. Hirschhorn, Atty., N. L. R. B., Washington, D. C., for respondent.

Before FAIRCHILD, Chief Judge, PELL, Circuit Judge, and CAMPBELL, Senior District Judge.*

PELL, Circuit Judge.

This case presents the issue of whether the National Labor Relations Board (Board) abused its discretion by certifying a bargaining unit composed of offset and letter press production employees, packers, and ancillary groups at the Diversey Avenue plant of W. F. Hall Printing Company (Company) in Chicago.

In August, 1974, the Graphic Arts International Union Local No. 245 (Union), which has been permitted to intervene in the present proceedings, filed a petition with the Board seeking certification as the exclusive bargaining representative of a group of the Company's employees. The parties were unable to agree upon the scope of an appropriate unit. After a hearing, the Board's Regional Director determined that an appropriate unit for the purposes of collective bargaining would be:

All letter press first pressmen, letter press second pressmen, letter press helpers and apprentice helpers, offset pressmen, offset press tenders, offset helpers and apprentice helpers, packers, premium men, stock handlers, sheeter operators, cylinder pressmen, grinder-polishers, roller wash-up men, Ink Room employees and Overlay and Pre-make Ready employees employed at the Employer's Chicago, Illinois facility now located at Diversey Avenue; but excluding all maintenance employees, heater department employees, office clerical employees, sales employees, guards and supervisors as defined in the [National Labor Relations] Act and all other employees.

The Company's request for Board review of this decision was denied, and the employees voted in favor of the Union.

In order to obtain judicial review of the decision, the Company declined the Union's request to bargain. The Union filed an unfair labor practice charge alleging that the Company violated sections 8(a)(5) and 8(a)(1) of the National Labor Relations Act

---

* William J. Campbell, Senior District Judge of the Northern District of Illinois, is sitting by designation.

as amended.[1] The Regional Director issued a complaint, and the Company defended on the grounds that the bargaining unit was inappropriate. The Board granted summary judgment in favor of the Union. The Company filed a petition for review in this court, and the Board cross-petitioned for enforcement.

While the Company presents arguments directed to the impropriety of the inclusion of unskilled packers and ancillary employees in the unit with skilled press operators, we regard the principal contention of the Company to be that there should not have been joined in a single unit letterpress personnel and offset press personnel. The Union asserts that the Company had adduced exhaustive testimony consisting of detailed descriptions of the offset and letterpress printing techniques for the purpose of showing numerous differences between the two processes. Neither the Union nor the Board appear to negate the existence of substantial differences in techniques between the two types of press operations, and for the purposes of this case we will assume that the differences do exist.

The skills required by offset pressmen and letterpress pressmen are different, as are the skills required of their helpers. When the Company first installed offset presses, the crew positions were filled with persons from the letterpress crews. Since that time, no permanent transfers have been made between the offset and letterpress departments. The extent to which temporary transfers are made is disputed. It is undisputed that it takes substantially less time to train someone skilled in either letterpress printing or offset printing to operate the other type of press than to train someone with no printing skills to operate either type of press.

The Press Room Manager has supervisory responsibility for all of the press and ancillary functions discussed above. The Letterpress Supervisor, the Offset Press Supervisor, the Ink Room Supervisor, the Pre-Make-Ready Supervisor and the Roller Room Foreman all report directly to him.

The Letterpress foremen report to the Letterpress Supervisor, and the Offset foremen report to the Offset Press Supervisor. The bindery, warehouse, machine shop, and other departments are under other supervision and were not included in the unit found to be appropriate.

Since the Company defends solely on the grounds that the unit determination was inappropriate and it indisputably refused to bargain, the Company violated sections 8(a)(5) and 8(a)(1) of the Act if the Board's unit determination was correct. *NLRB v. Krieger Ragsdale & Co., Inc.*, 379 F.2d 517 (7th Cir. 1967), *cert. denied*, 389 U.S. 1041, 88 S.Ct. 780, 19 L.Ed.2d 831 (1968).

Congress, in enacting the National Labor Relations Act, imposed upon the Board in section 9(b), 29 U.S.C. § 159(b), the duty to determine, in each case, whether the unit petitioned for is "appropriate" for the purposes of collective bargaining. That section in relevant part reads as follows:

> (b) The Board shall decide in each case whether, in order to assure to employees the fullest freedom in exercising the rights guaranteed by this subchapter, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof . . . .

■ If this court finds that the facts found by the Board are supported by substantial evidence, it must enforce the Board's order if the Board's exercise of discretion was reasonable as applied to the facts and not arbitrary and capricious. *Krieger-Ragsdale, supra.* The Board's exercise of its discretion in unit determination is rarely to be disturbed. *Wil-Kil Pest Control Co. v. NLRB*, 440 F.2d 371, 374–75 (7th Cir. 1971). The Board is not required to choose the most appropriate bargaining unit in a given factual situation but only is required to choose an appropriate unit within the range of appropriate units. *Id.* at 375.

In arguing that letterpress personnel and offset press personnel should not be joined

---

1. 29 U.S.C. § 151 *et seq.*

in one unit, the Company relies on cases which hold that lithographic employees possess a sufficient community of interest to warrant a separate bargaining unit. The Board has granted separate recognition where both an offset union and another union have sought to represent employees in the same plant,[2] where an offset union has sought to organize a unit limited to offset employees,[3] and where offset employees have sought a craft severance.[4] The Board has denied offset employees separate units even in these contexts in cases where there was substantial interchange of employees between offset and other presses and other close connections between the groups.[5] In arguing that the unskilled packers and the ancillary department should not be joined with the pressmen's unit, the Company cites cases which indicated that it is improper to include these employees in lithographic craft units.[6] In the present case the Graphic Arts Union is the only union seeking representation, and it is neither seeking a unit limited to offset employees nor seeking to sever a group of employees from an existing unit. There is clearly less interchange in this case between letterpress personnel and offset personnel than in cases in which the Board has denied a Union's request for a separate unit,[7] but the propriety of separate units is not in issue. In issue is whether the Board abused its discretion by approving the unit which the Regional Director found to be appropriate.

The Regional Director did not purport to find a craft unit. He found:

The evidence shows that these job classifications, taken together, constitute those departments in the Employer's operations which are centered around the pressrooms. Since the evidence does not disclose the existence of any pressroom-related departments which have not been included in the petition, the requested unit is an appropriate multi-departmental printing unit. . . .

The Regional Director recognized that the Board generally has held that offset employees might constitute a separate unit, but he indicated that he believed that this was a case in which the general rule should not be applied. He stated:

Because the employees in the included classification share common supervision, perform job functions which are related to both the Letter press and offset operations and do not have any history of separate collective bargaining, it cannot be said that a multi-department unit of letter press and offset production employees is inappropriate. I find . . . that the employees in the unit found appropriate share a community of interest. This being the case, such employees must be given the opportunity to decide whether they desire to be represented for the purposes of collective bargaining as a single unit by the Petitioner.

Prior decisions of the Board provide only limited support for the result reached by the Regional Director. This also appears to be an unusual case in that the Company seeks a more narrowly defined unit and the Union seeks a more broadly defined one. In *Master-Craft Corporation,* 92 NLRB 524 (1950), a union sought to sever from a production and maintenance unit a unit which contained, *inter alia,* offset pressmen and letterpress pressmen. The employer did not specifically challenge the composition of the proposed unit but challenged the severance in light of the bargaining history at the plant. The Board held that severance was proper and that the unit would be appropriate if elected. It stated:

Where, as here, there is some degree of integration between the letterpress em-

2. *E. g., Con P. Curran Printing Co.,* 57 NLRB 185 (1944).

3. *E. g., McKay Press,* 113 NLRB 683 (1955).

4. *E. g., NLRB v. Weyerhaeuser Co.,* 276 F.2d 865 (7th Cir. 1960), *cert. denied,* 364 U.S. 879, 81 S.Ct. 168, 5 L.Ed.2d 102.

5. *E. g., Pacific Press, Inc.,* 66 NLRB 458 (1946).

6. *E. g., Padgett Printing and Lithography Co.,* 101 NLRB 144 (1952).

7. *Cf. Pacific Press, Inc.,* 66 NLRB 458 (1946).

ployees and those in the lithographic process, we have recognized that these employees have related interests and may, if they so desire, constitute a separate multidepartmental unit. *Id.* at 525. (Footnote omitted.) In *Kingsport Press, Inc.,* 146 NLRB 260 (1964), and in *Conger Printing Co.,* 175 NLRB 551 (1969), the Board found somewhat similar units appropriate; but as in *Master-Craft,* there was no opposition by the employers on the grounds that the units sought were over-inclusive. In *National Cash Register Co.,* 168 NLRB 910 (1967), the Board permitted a group of pressmen and helpers who worked on presses which used rubber plates to vote on severance from a production and maintenance unit to join a unit representing employees who worked on both offset presses and letterpresses and who were not members of the production and maintenance unit.

*Ditto, Inc.,* 126 NLRB 135 (1960), appears to provide some support for the Company's position. In *Ditto* one union sought a craft unit of all letterpressmen, offset pressmen, assistants, apprentice cameramen, strippers, pasteupmen, platemakers, and all apprentices in the offset plate department, excluding all other employees. Another union sought a production and maintenance unit. The employer favored a production and maintenance unit and opposed the less inclusive unit on the grounds that it was not a distinct and homogeneous group of skilled craftsmen working as such. The Board agreed with the employer, holding that the less inclusive unit would be inappropriate since the Board normally considered letterpressmen and offset pressmen as belonging in separate units unless there exists regular interchange between the two groups and since the employer opposed the requested unit. The Board cited *McQuiddy Printing Co.,* 116 NLRB 1114 (1956), and *Worzella Publishing Co.,* 121 NLRB 78 (1958). In *McQuiddy* one union sought to include both offset pressmen and letterpress pressmen in one unit and another union sought a separate lithographic unit. The Board indicated that a combined unit would only be appropriate if there were regular interchange between the two groups and ruled in favor of separate units. In *Worzella* a union sought a unit composed of letterpress operators, hand compositors, stereotypers, and lithographic employees. Citing *McQuiddy,* the Board indicated that normally each of these groups was separately represented but that since the employer did not object to the proposed unit on the grounds of the joinder of such groups, the joinder was appropriate. The employer had urged that only a unit composed of all employees would be appropriate.

■ Having reviewed this precedent, we conclude that the Board did not abuse its discretion by approving the unit defined by the Regional Director. In *Ditto* the Board had a choice between ordering a broadly inclusive unit or a more narrowly defined unit; in this case, because there is no indication that any unions wish to represent the separate groups, the Board's choice is between no representation and representation by the broadly defined unit. In *Ditto* the union sought to justify the unit it requested as a craft unit; in this case the Regional Director did not purport to find a craft unit but found a unit composed of all printing personnel, and the unit sought follows the Company's organizational lines. Even if the Board's result in *Ditto* were viewed as inconsistent with its result in the present case, we could not say that the Board's result in the present case was so unreasonable or so arbitrary and capricious that we could find that it abused its discretion by approving the unit.

Further, without in any way intending to disparage the real value of precedents as affording necessary and valuable guide lines for both unions and employers in governing their conduct in this area as well as others in labor-management relations to the end of facilitating industrial harmony, we note that the Company's argument is fundamentally based upon the cases in which the appropriate unit established by the Board has not lumped together the two types of printing personnel. Aside from

the fact that in many of these cases the context was different than that before us, the Company has not really addressed itself to the issue of why the single Union here involved as the bargaining agent for the employees in the challenged unit would in any way deprive any of the employees in the unit of "the fullest freedom in exercising the rights guaranteed by [the] Act." We are not persuaded that the Union, notwithstanding differences in methods and techniques utilized by the two different press operations, could not fully and properly represent, as it will be its duty, all of the employees in the unit. Proper representation of employees in widely diverse types of operations by one designated bargaining agent is no stranger in the modern industrial picture.

■ Without attaching too much significance to it, the Company notes that historically the Graphic Arts Union has specialized in representing lithographic employees. The Union's constitutional jurisdiction or its history is not controlling in this context. The critical requirement is the Union's willingness to represent the employees, *Wayside Press,* 104 NLRB 1028 (1953). It is up to the employees to evaluate the competence of potential representatives and to choose among them.

Accordingly, the petition of the company for review is denied and the Board's cross-petition for enforcement is granted.

PETITION FOR REVIEW DENIED; CROSS–PETITION FOR ENFORCEMENT GRANTED.