GRAPHIC ARTS INTERNATIONAL UN-
ION LOCAL 1B, TWIN CITIES, and
Twin Cities Local 229, Graphic Arts In-
ternational Union, Plaintiffs,

v.

MARTIN PODANY ASSOCIATES, INC.,
and Printing Unlimited, Inc.,
Defendants.

Civ. No. 4–81–921.

United States District Court,
D. Minnesota,
Fourth Division.

Feb. 8, 1982.

Samuel D. Heins, Tanick & Heins, Minne-
apolis, Minn., for plaintiffs.

Dale E. Beihoffer, Faegre & Benson, Min-
neapolis, Minn., for defendant Printing Un-
limited, Inc.

Sam T. Courey, Jr., Minneapolis, Minn.,
for defendant Martin Podany Associates,
Inc.

MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

FACTS

The plaintiffs in this lawsuit are two
labor unions, Local 1B and Local 229, who
were parties to collective bargaining agree-

ments with defendant Martin Podany Associates, Inc. (Podany). Podany was a corporation engaged in the business of commercial printing. The plaintiffs are certified as the exclusive bargaining representatives of employees of Podany. Both collective bargaining agreements contain clauses requiring arbitration of all disputes arising in connection with the agreement. The collective bargaining agreements also contain no-strike clauses. In addition, the Local 229 agreement contained a successor provision:

The Employer agrees that all obligations under this contract, and the performance thereof, by the buyer, lessee, transferee or assignee, become a condition of sale, transfer, lease or assignment.

Local 229 Agreement, Article 36. The Local 1B agreement does not contain a successor provision.

On November 4, 1981, Podany contracted to sell the assets of the company to Frank Beddor, Jr. The closing of the sale took place on December 3, 1981. Beddor then conveyed the assets, excluding real estate, to his wholly owned corporation, Printing Unlimited, Inc. (PUI). On December 4, 1981, Podany announced to the Unions and to its employees that it was ceasing operations and that the employment of all employees would be permanently terminated. Podany paid to its employees in full their final paychecks, accrued vacation pay, and severance pay. PUI notified Podany's employees on December 4, 1981, that they were eligible to apply for employment with PUI. They were advised that the terms of employment would be different than had applied when Podany was the employer. PUI had also run an ad in a newspaper soliciting applications, but gave the applications of the Podany employees priority.

On Monday, December 7, 1981, PUI began operations. Its work force consisted of 31 employees, each of whom had been an employee of Podany until Friday, December 4, 1981, with the exception of the president of the company, Robert Jorgenson. PUI occupies the same physical plant that Podany had occupied. It uses the same machinery, equipment and methods of production

that Podany had used. It employs the same plant manager, Ralph Fischer, that Podany had employed. It manufactures the same products and provides the same services as Podany. It sells to the same customers as Podany. The methods of production, job functions and job descriptions have remained the same. Beddor has stated that he bought Podany's assets intending to liquidate the existing equipment and install a different type of equipment. The new equipment would require changes in the job functions of employees.

On December 16, 1981, Local 1B submitted grievances based on noncompliance with the collective bargaining agreement to PUI. PUI rejected the grievances on December 19, 1981, on the ground that it was not bound by the collective bargaining agreement. On December 17, 1981, and on December 29, 1981, Local 229 submitted grievances alleging violations by PUI of the terms of its collective bargaining agreement. PUI has refused to honor the collective bargaining agreement.

The plaintiff unions commenced a strike against PUI on December 17, 1981. The strike is still continuing. On January 15, 1982, both unions filed petitions with the NLRB seeking elections to determine their right to represent the employees of PUI.

The plaintiffs now seek an order compelling PUI to submit to arbitration the pending grievances of Local 1B and Local 229.

## DISCUSSION

The plaintiffs claim that PUI is derivatively bound to the collective bargaining agreements signed by Podany as a successor to Podany. The claim involves the labor law doctrine of successorship, which the Third Circuit has described in the following way:

Broadly stated, in the law of labor relations the successorship issue deals with the extent to which an employer is obligated to honor the legal relations established between another employer and a union. The question arises in various

contexts,[8] and no single formula for its resolution has been developed by the federal courts.

8 For example, the issue in any given successorship case may involve, *inter alia*: (1) the survival of the union's status as exclusive bargaining agent of the former employees and the new employer's duty to recognize and bargain with this union; or (2) the power of the National Labor Relations Board to order the new employer to remedy unfair labor practices committed by the prior employer; or (3) the extent to which the new employer may be compelled to arbitrate under the former employer's collective bargaining agreement; or (4) the extent to which the new employer is bound by the substantive provision of the collective agreement in effect at the time of succession.... These questions may arise in the context of an unfair labor practice case, of a suit for breach of a labor agreement, or in an action to enforce an NLRB order.

*General Teamsters, Chauffeurs and Helpers, Local Union No. 249 v. Bill's Trucking, Inc.*, 493 F.2d 956, 959 (3d Cir. 1974). This lawsuit arises in the context of a suit for breach of labor agreements under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Because the plaintiffs seek to compel arbitration in accordance with the labor agreements, jurisdiction is also based on 9 U.S.C. § 4.

In *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964), a company with employees covered by a collective bargaining agreement merged into a second company and ceased doing business as a separate entity. When the second company refused to honor the collective bargaining agreement, the union brought an action under section 301 to compel arbitration of the dispute under the collective bargaining agreement's arbitration clause. The Supreme Court held that in the context of a wholesale transfer of employees from one employer to another, the strong federal labor policy favoring arbitration of disputes required that the union's claims under the collective bargaining agreement be submitted to an arbitrator.

In another Supreme Court decision on the successorship issue, *NLRB v. Burns International Security Services, Inc.*, 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972), Wackenhut Corp. had contracted to provide security services to Lockheed Aircraft. Wackenhut's employees at the site were represented by a union and covered by a collective bargaining agreement. Lockheed subsequently awarded the contract for the next year's services to a competitor, Burns. Burns retained 27 of the guards Wackenhut had employed and brought in 15 of its own employees. When Burns refused to acknowledge the union as the exclusive bargaining representative, the union filed an unfair labor practice charge with the NLRB. Because this action was brought under section 8 of the National Labor Relations Act, 29 U.S.C. § 158, rather than section 301, the Supreme Court found that the policy of section 8 to compel employers to bargain with the representative of the majority of its employees controlled the case. The Supreme Court held that Burns was required to bargain with the union because it had hired a majority of Wackenhut's former employees who had chosen that union. However, the Supreme Court held that Burns was not bound by the terms of the agreement signed by Wackenhut; it only had to bargain with the union to attempt to reach its own agreement with the union.

In *Howard Johnson Co. v. Hotel and Restaurant Employees*, 417 U.S. 249, 94 S.Ct. 2236, 41 L.Ed.2d 46 (1974), Howard Johnson Co. purchased the assets of a restaurant and motor lodge. The employees of the former owner were represented by a union and a collective bargaining agreement was in effect. The former owner had 53 employees. Howard Johnson employed 45 people at the restaurant and motor lodge, only nine of whom had been employed by the former employer. The union challenged the failure of Howard Johnson Co. to hire more of the former employees, characterizing the action as a "lockout" in violation of the collective bargaining agreement. The union sued under section 301 to obtain an order compelling arbitration of the dispute. The Supreme Court held that compelling arbitration would be an unwarranted extension of *Wiley*. Rather than hiring all of the employees of a disappearing corporation, as in *Wiley*, Howard Johnson Co. hired only a small fraction of the employees. In addition, the corporation from which Howard

Johnson Co. purchased the assets did not cease to exist; it continued to operate in other areas. Moreover, the union was not seeking to protect the interests of those employees hired by Howard Johnson Co. It sought to have the rights of those not hired submitted to arbitration. Thus, where there is no "substantial continuity in the identity of the work force across the change in ownership," 417 U.S. at 263, 94 S.Ct. at 2243, the new employer cannot be forced to submit to arbitration.

The instant case is brought under section 301 to compel arbitration. Thus, the policy favoring arbitration of labor disputes expressed in *Wiley* applies rather than the policy favoring bargaining between employers and recognized employee representatives expressed in *Burns.* The Court finds that the facts of this case are controlled by the rule of law enunciated in *Wiley.* PUI is using the same plant, machinery and methods as Podany, hired the same supervisor, makes the same products and provides the same services, and sells to the same customers. Most importantly the employees it hired all came from Podany. Because of the substantial continuity in work force and the uninterrupted continuation of the business enterprise of Podany by PUI, PUI must be deemed a successor to Podany's collective bargaining agreement.

In addition to its argument that it is not a successor to Podany, PUI has raised two arguments in the nature of defenses to its obligation to arbitrate. First, it argues that the unions have forfeited their right to compel arbitration by striking against PUI. Both collective bargaining agreements in this case contain no-strike clauses as well as arbitration clauses. PUI contends that the unions have repudiated the collective bargaining agreements by striking and therefore are not entitled to arbitration of their grievances under those agreements. This issue is controlled by *Local Union No. 721 v. Needham Packing Co.,* 376 U.S. 247, 84 S.Ct. 773, 11 L.Ed.2d 680 (1964). In that case a union called a strike after the firing of an employee despite the existence of arbitration and no-strike clauses in the contract. The employer considered the strike a repudiation of the collective bargaining agreement and discharged all the striking employees. The union subsequently presented written grievances on behalf of the employees, but the employer refused to process them. The union filed suit under section 301 to compel arbitration. The Supreme Court held that "there was no 'inflexible rule rigidly linking no-strike and arbitration clauses of every collective bargaining contract in every situation.' " 376 U.S. at 251, 84 S.Ct. at 775, *quoting Drake Bakeries Inc. v. Local 50,* 370 U.S. 254, 261, 82 S.Ct. 1346, 1350, 8 L.Ed.2d 474 (1962). The Supreme Court also noted that nothing in the agreement excluded from the employer's duty to arbitrate any dispute over a breach of the no-strike clause—i.e., a breach of the no-strike clause is itself arbitrable. The arbitration clauses in the collective bargaining agreements involved in the instant case are also broad enough to include breach of the no-strike clauses. As a successor to Podany, PUI is bound by the arbitration clauses. It has several options available to it to remedy the alleged breach of the no-strike clauses. Foreclosing the unions from obtaining arbitration is not an appropriate remedy.

Finally, PUI argues that the dispute here involves a matter falling within the primary jurisdiction of the NLRB and therefore the Court should deny relief. The unions have filed petitions with the NLRB seeking elections to determine their right to represent the employees of PUI. The petition before the NLRB, however, involves a completely different issue than is raised in this case. This case involves the rights of the employees covered by the current collective bargaining agreements. The elections, if any, conducted by the NLRB will determine who, if anyone, will negotiate on behalf of the employees in future labor agreements. There is no conflict between the jurisdiction of this Court and the jurisdiction of the NLRB. *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. at 551 n. 5, 84 S.Ct. at 915 n. 5.

Based on the foregoing,

IT IS HEREBY ORDERED that Printing Unlimited, Inc., proceed with arbitration,

through final adjudication, of the grievances of Graphic Arts International Union Local 1B, Twin Cities, in accordance with the collective bargaining agreement in effect between said union and Martin Podany Associates, Inc., and

IT IS FURTHER ORDERED that Printing Unlimited, Inc., proceed with arbitration, through final adjudication, of the grievances of Twin Cities Local 229, Graphic Arts International Union, in accordance with the collective bargaining agreement in effect between said union and Martin Podany Associates, Inc.