**GENERAL SERVICE EMPLOYEES UNION LOCAL 73, SERVICE EMPLOYEES INTERNATIONAL UNION, AFL–CIO, Plaintiff,**

v.

**BURNS INTERNATIONAL SECURITY SERVICES, INC., Defendant.**

No. 81 C 5976.

United States District Court,
N.D. Illinois, E.D.

April 22, 1983.

Michael B. Erp, Ann Hodges, Katz, Friedman, Schur & Eagle, Chicago, Ill., for plaintiff.

Gregory J. Malovance, C.R. Gangemi, Winston & Strawn, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

General Service Employees Union Local 73, Service Employees International Union, AFL–CIO ("Local 73") sues Burns International Security Services, Inc. ("Burns") under Labor-Management Relations Act § 301 ("Section 301"), 29 U.S.C. § 185, to enforce arbitration decisions and to compel arbitration of grievances pursuant to a collective bargaining agreement. Burns has moved to dismiss for lack of subject matter jurisdiction.[1] For the reasons stated in this memorandum opinion and order, Burns's motion is denied.

### Background[2]

Some time in 1974 Local 73 began acting as the bargaining representative for guards employed by Commonwealth Edison's nucle-

---

1. Burns's Answer ¶ 3 denied the jurisdictional allegations of Local 73's Amended Complaint (the "Complaint") ¶ 3, thereby raising the issue of this Court's subject matter jurisdiction. Burns's current motion is thus technically unnecessary (and, when labeled by Burns as a Fed.R.Civ.P. ("Rule") 12(b)(1) motion, untimely). This Court will treat Burns's motion as furthering its "suggestion" this Court lacks subject matter jurisdiction. See Rule 12(h)(3); 5 Wright & Miller, *Federal Practice and Procedure* § 1350, at 548 (1969).

2. These background facts are drawn from the parties' submissions as well as the pleadings. In that regard this Court has followed the procedures appropriate for Rule 12(b)(1) motions challenging actual subject matter jurisdiction. *See id.* at 549–59.

ar power plants at Dresden Station and Zion Station here in Illinois (collectively the "Dresden and Zion guards"). Some time in 1977 Burns obtained the contract to provide security for the Dresden and Zion plants.

In August 1980 Burns, as a member of a multiemployer bargaining association, entered into an agreement (the "1980 Agreement") with Local 73 covering a geographically-defined collective bargaining unit. Complaint Ex. A.[3] In February 1981 Burns signed another agreement (the "Premium Letter") with Local 73 relating specifically to the Dresden and Zion guards. Complaint Ex. B. Under Premium Letter Art. I, § 1 Burns recognized Local 73 as the exclusive bargaining representative for those guards, and under Art. X the parties agreed to grievance and binding arbitration procedures.

On August 6, 1981 an arbitration panel acting under the Premium Letter rendered grievance decisions favorable to some Dresden and Zion guards who had been disciplined or terminated during the term of the Premium Letter. Burns has refused to comply with those arbitration awards. It has also refused to permit arbitration of other grievances by Dresden and Zion guards arising during the term of the Premium Letter.

Burns's refusals stem from a July 30, 1981 decision by the National Labor Relations Board ("NLRB"), *In re Burns International Security Service, Inc. and International Union, United Plant Guard Workers of America* ("UPGWA"), Nos. 13–RC–15462 and –15467, 257 N.L.R.B. (No. 26) (the "NLRB decision"). That decision (*id.* at

11–12) found the Dresden guards and the Zion guards constituted separate collective bargaining units. Accordingly a representative election was ordered (*id.* at 12–13) in each of those units.[4]

Burns asserts (Mem. 5) its obligations under the Premium Letter are "premised" on inclusion of the Dresden and Zion guards within the multiemployer unit as defined in the 1980 agreement (a definition incorporated by reference in the Premium Letter). Burns contends (R.Mem. 3–5) the NLRB decision effectively removed the Dresden and Zion guards from the employee unit to which its collective bargaining agreements apply. From those premises Burns concludes (*id.* at 2) (1) the issue between it and Local 73 is representational, not contractual and (2) that representational issue is committed to the NLRB's primary jurisdiction and so is beyond this Court's jurisdiction.

### The NLRB Decision: Prospective and Retroactive Effect

Burns's entire position rests on a perverse reading of the NLRB decision. Burns characterizes that decision as having retroactively removed the Dresden and Zion guards from the employee unit to which Burns's contractual obligations run. That insupportable construction leads Burns to say repeatedly this action requires a determination of representational issues.

But in fact the NLRB decision did nothing more than determine there should be an election to decide which union would represent the Dresden and Zion guards *in the future.*[5] That decision was irrelevant to

---

**3.** By its terms 1980 Agreement App. 1 covers the Zion plant, located in "Lake County, Illinois, north of Route 176" (Area B). Grundy County, where the Dresden plant is located, is not included in the geographic description in App. 1. Local 743 official Jonathan Rothstein testified the Dresden and Zion guards were informally treated by the parties as outside the 1980 Agreement. Burns Motion, Rothstein Dep. 8–9. In any event a later agreement, described next in the text, specifically applied the substance of the 1980 Agreement to the Dresden and Zion guards.

**4.** The NLRB decision reversed a July 1980 decision by an NLRB Regional Director dismissing UPGWA petitions seeking to represent the Dresden and Zion guards. UPGWA's request for review had been granted in August 1980. Hence the struggle between Local 73 and UPGWA over representing the Dresden and Zion guards was at least in some sense "live" during negotiation of the 1980 Agreement and the Premium Letter. Burns Mem. 2–3.

**5.** Perhaps predictably, the ordered elections have spawned further disputes and NLRB actions. Burns Mem. 4.

the question of Burns's existing contractual obligations.

Burns contends (Mem. 2, 7) the Dresden and Zion guards were not included in the 1980 Agreement because UPGWA petitions to represent those guards were then pending, causing uncertainty as to the guards' representation. *But see* n. 3. Burns also sought to *condition* the Premium Letter (before it was signed) on the outcome of NLRB's review of the Regional Director's decision, but Local 73 rejected that condition. Rothstein Dep. 11–20 & Exs. 1 & 2. In any event Burns then *signed* the Premium Letter and thereby (Art. I, § 1) explicitly (1) recognized Local 73 as bargaining representative for the Dresden and Zion guards and (2) agreed those guards were covered by the terms of the Premium Letter. There is simply no question Burns thus obligated itself to the Dresden and Zion guards under the Premium Letter.

Burns cites totally inapplicable precedents rejecting attempts to use Section 301 actions to decide representational issues in the face of prior NLRB determinations of those same issues. *See, e.g., Yellow Freight System, Inc. v. Automobile Mechanics Local 701, International Ass'n of Machinists, AFL–CIO,* 684 F.2d 526 (7th Cir.1982); *Smith Steel Workers v. A.O. Smith Corp.,* 420 F.2d 1 (7th Cir.1969). Here, however, the issue is Burns's contractual obligations to its employees, not which union will represent the Dresden and Zion guards in the future. *Graphic Arts International Union Local IB, Twin Cities v. Martin Podany Associates, Inc.,* 531 F.Supp. 169, 172 (D.Minn.1982); *see also John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 551 n. 5, 84 S.Ct. 909, 915 n. 5, 11 L.Ed.2d 898 (1964). Again Burns's case citations reflect its tortuous reading of the NLRB decision.

Traditional contract law principles equally demonstrate the poverty of Burns's position. All the disputed grievances involve individual Dresden and Zion guards, who are of course the directly intended beneficiaries of the Burns-Local 73 Premium Letter. *See Chicago District Council of Carpenters Pension Fund v. Dombrowski,* 545 F.Supp. 325, 326 (N.D.Ill.1982). Burns really seeks to render individual guards outlaws, deprived of their bargained-for contract rights because the group to which they belong might choose a different bargaining representative for their next contract negotiations.[6] Merely to state that position demonstrates its absurdity.

Finally, Burns's contention invites labor law chaos. Despite its 1980 Agreement and the Premium Letter, Burns would deprive the Dresden and Zion guards of any union representation until the ordered elections are resolved. That position would mean any time a NLRB decision found a representational issue within a previously-recognized bargaining unit, all contracts covering employees affected by the representational dispute would be abrogated. Again to state the argument is to reject it.

### Conclusion

This Court is *not* determining an appropriate bargaining unit, as Burns would have it (Mem. 5–9). It is being asked to, and it will, afford Burns's employees their contractual due whatever it may be.

Burns's motion to dismiss for lack of subject matter jurisdiction is denied. This action has been stalled far too long. This Court expects expedited handling from here on out, so that the rights of the grievants may be determined expeditiously.

---

**6.** Indeed the bankruptcy of Burns's assertions is graphically demonstrated by its Mem. 3, which points out the basis for the NLRB decision was "that the Zion and Dresden guards have not realized 'the benefits of effective representation' within the multiemployer bargaining unit...." In the universe Burns occupies, it can properly use that determination to deny those same guards "the benefits of effective representation" Local 73 is trying to give them by prosecuting grievances on their behalf! As Burns would have it, no one—not Local 73, not any other bargaining representative (for there is not now any other), not the guards themselves—can assert whatever rights the guards have under the Premium Letter.