YELLOW FREIGHT SYSTEM, INC.,
Plaintiff-Appellee,

v.

AUTOMOBILE MECHANICS LOCAL 701 INTERNATIONAL ASSOCIATION OF MACHINISTS, AFL–CIO, Defendant-Appellant.

No. 81–2903.

United States Court of Appeals,
Seventh Circuit.

Argued May 7, 1982.

Decided Aug. 9, 1982.

Sheldon M. Charone, Chicago, Ill., for defendant-appellant.

Walter P. Loomis, Jr., Chicago, Ill., for plaintiff-appellee.

Before SWYGERT, Senior Circuit Judge, COFFEY, Circuit Judge, and TEMPLAR,* Senior District Judge.

COFFEY, Circuit Judge.

Review of a decision of the United States District Court for the Northern District of Illinois, Eastern Division, Affirmed.

This case is a review of a decision of the district court granting Yellow Freight's, the plaintiff-appellee, motion to enjoin an arbitration hearing between the parties. This dispute arose out of a collective bargaining agreement between Yellow Freight and the

---

* The Honorable George Templar, Senior District Judge of the United States District Court for the District of Kansas, sitting by designation.

defendant-appellant, Local 701 of the International Association of Machinists (hereinafter "IAM"). The agreement provided that "after acquired" locations [1] would be covered under the terms of the then existing agreement. The district court declared the grievance moot, ruling that a prior National Labor Relations Board decision directing that an election be held among the mechanics at the newly acquired Bedford Park, Illinois terminal disposed of all of the issues giving rise to the grievance. The court reasoned that the dismissal of IAM's representation petition by the NLRB and the order by the NLRB that an election be held was a determination that accretion [2] of IAM's contract to the new terminal was inappropriate.

Yellow Freight Systems, Inc. is a large trucking enterprise engaged in the interstate trucking industry and owned and operated four other satellite subterminals in the Chicago area prior to the addition of the Bedford Park facility. These four satellite subterminals are located in Palatine, West Chicago, Melrose Park, and Cicero. These terminals provide the distribution point for all local pickup and delivery services of freight for Yellow Freight's customers. Traditionally IAM was the collective bargaining agent representative of the foremen, mechanics, helpers and apprentices employed at the four satellite terminals.

For some time, Yellow Freight maintained another type of terminal, known as a break-bulk terminal, one in Effingham, Illinois, one in Des Moines, Iowa, and another in Baxter Springs, Kansas. A break-bulk terminal is a distribution center at which over-the-road shipments are separated and broken down, consolidated and then transferred for distribution to local satellite terminals. Recently, Yellow Freight consoli-

dated the above-referred to break-bulk operations into one break-bulk terminal at Bedford Park, Illinois. When Yellow Freight consolidated these three break-bulk operations at Bedford Park, all the mechanics affected by the transfer of operations were offered new job opportunities and transfer seniority rights into the Bedford Park operation. In contrast to the other Yellow Freight subterminals (in Palatine, West Chicago, Melrose Park and Cicero), at each of the affected facilities the mechanics were represented by the International Brotherhood of Teamsters, rather than by the IAM.

The dispute between the parties arose when Yellow Freight notified the IAM of their intention to transfer the mechanics from Yellow Freight's then existing operations to the consolidated facility in Bedford Park. The dispute centers around whether the IAM contract should be extended to include employees at the Bedford Park terminal and thus give the IAM members at the Yellow Freight facilities in Palatine, West Chicago, Melrose Park and Cicero the opportunity to transfer to the mechanic jobs opening up at the new Bedford Park terminal and thus preclude Yellow Freight from shifting their Teamsters members from Effingham, Des Moines, and Baxter Springs to the Bedford Park facility. The IAM took the position that because the existing contract required the company to apply the contract to newly acquired facilities, the company was thus forced to apply the IAM contract to the Bedford Park facility, giving the IAM union sole and exclusive recognition as the collective bargaining agent, their members seniority rights and the right of transfer to the mechanic jobs at Bedford Park. Yellow Freight refused to accept IAM's position regarding the existing contract. On April 14, 1981, IAM filed

1. Article I section (h) of the agreement between the parties provides:

This agreement shall cover all future locations which the Company may operate during the term of this agreement or any extension thereof which involves the partial or complete transfer of operations from the existing locations or any work covered or performed by employees in the existing loca-

tions under the jurisdiction of Automobile Mechanics' Local No. 701, as permitted by the IAM&AW, AFL–CIO, in the Greater Metropolitan Area of Chicago.

2. An accretion of employees, within the context of labor law, is an amalgamation of one group of employees into an existing unit covered by a bargaining agreement.

a grievance with the company demanding bidding[3] rights for an IAM bargaining unit at the new facility. At the time of the initiation of this grievance, the company took the position that since the Bedford Park terminal was a relocation of operations from Teamster represented terminals at Effingham, Des Moines, and Baxter Springs, the Teamsters would continue to represent the mechanics at the newly consolidated Bedford Park terminal.

The union filed suit in the United States District Court for the Northern District of Illinois, Eastern Division, on April 14, 1981 asking for an injunction to compel Yellow Freight to apply the existing IAM contract to the Bedford Park facility until an arbitrator could rule upon the grievance. The injunction was denied on April 30, 1981 on the grounds that a status quo injunction was inappropriate for the failure of the IAM to demonstrate to the court's satisfaction that Yellow Freight's conduct, if not enjoined, would frustrate or interfere with the arbitration process.

On the same day, April 30, 1981, the IAM filed an unfair labor practice charge against Yellow Freight with the National Labor Relations Board alleging a violation of § 8(a) of the National Labor Relations Act as amended,[4] reciting that Yellow Freight was guilty of assisting and supporting the Teamsters Union and making the transfer of employees contingent upon their support and acceptance of the Teamsters' representation. The acting regional director of the NLRB[5] investigated the charges and, upon the finding of insufficiency, declined to issue a complaint. The union's appeal to the NLRB was denied and the original determination made by the acting regional director was sustained and became final.

On June 1, 1981, the union filed a unit clarification petition with the NLRB.[6] In this petition, the IAM sought a determination as to whether or not the Bedford Park facility was for all purposes under the contract a part of the bargaining unit covered by IAM. After reviewing its position, on June 9, 1981, the IAM withdrew its request for unit clarification.

On June 5th, before the withdrawal of the petition for unit clarification, the IAM union filed a representation petition with the NLRB seeking a representation election among the disputed employees at the new Bedford Park terminal, or in the alternative, an amalgamation of these employees into the collective bargaining unit covered under IAM's existing contract with Yellow Freight. The regional director of the NLRB conducted a hearing and rejected IAM's position on the amalgamation question and directed an election to be held among "[a]ll mechanics employed by Yellow Freight System, Inc., in the shop and service lane, at its break-bulk terminal . . . [in] Bedford Park, Illinois." The election was

---

**3.** The term "bidding rights" refers to the right of current IAM employees to "bid" for an opportunity to transfer to the new Bedford Park facility. After all interested employees submit their bids, the jobs at Bedford Park would be awarded on the basis of seniority to those who submitted bids.

**4.** § 8(a) of the National Labor Relations Act, as amended, provides:

8. (a) It shall be an unfair labor practice for an employer—

(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7;

(2) to dominate or interfere with the formation or administration of any labor organization or contribute financial or other support to it . . .;

(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discour-

age membership in any labor organization: . . .;

(4) to discharge or otherwise discriminate against an employee because he has filed charges or given testimony under this Act;

(5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 9(a) . . . .

**5.** Donald J. Crawford was the Regional Director who issued the decision in this case.

**6.** A unit clarification petition is designed to deal with situations where "some ambiguity or dispute about inclusion of employees in an existing bargaining unit has been generated by some change in job structure." R. Gorman, *Basic Text on Labor Law* 51 (1976). This will occur when new jobs have been created or the tasks of an existing job modified.

ordered for October 30, 1981 at the Bedford Park terminal.

The company filed a request for review of the regional director's decision with the NLRB. The NLRB declined this request for review, and thus affirmed the regional director's decision to direct an election. On October 30, 1981, an election was held among the mechanics at the Bedford Park facility, and IAM prevailed in the representation election.

On October 16, 1981, after the order directing the election but prior to the October 30th election date, IAM informed Yellow Freight that IAM now intended to proceed to arbitration concerning the question of whether the company had violated the agreement between IAM and Yellow Freight when it refused to apply the labor agreement between Yellow Freight and the IAM to the Bedford Park facility. On October 23, 1981, Yellow Freight initiated this action in the federal district court and petitioned the court to issue a restraining order and an injunction against any further action on the grievance by the IAM.

The district court granted Yellow Freight's request for injunctive relief on November 18, 1981 holding that the regional director's decision to direct an election preempted the arbitrator's jurisdiction over the grievance and thus rendered moot any potential decision by an arbitrator.

## Issues

The sole issue to be decided on appeal is whether the district court erred when it granted Yellow Freight's request for an injunction based upon the premise that the NLRB order directing an election at the Bedford Park terminal superseded any possible decision by an arbitrator concerning IAM's grievance.

In the seminal case of *Carey v. Westinghouse Electric Corp.*, 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964), the Supreme Court addressed the issue of whether NLRB decisions took precedence over the decisions of arbitrators. In *Carey*, the International Union of Electrical, Radio & Machine Workers (the IUE), sought to compel West-

inghouse Electric to arbitrate a grievance, alleging that certain employees represented by another union were performing work which was properly confined to the area of jurisdiction of the IUE unit. Westinghouse refused to arbitrate this question on the grounds that the dispute more properly should be presented to the NLRB. In ordering arbitration, the Court indicated that while the question may ultimately be presented to the NLRB, if the dispute is presented in a piecemeal fashion, "the weight of the arbitration award is likely to be considerable, if the Board is later required to rule on phases of the same dispute." 375 U.S. at 271, 84 S.Ct. at 408.

However, the Court inserted a cautionary note stating that since the disputes were only jurisdictional in nature and thus entirely within the province of the NLRB, the arbitrator's decision could conceivably not be the final word.

> Should the Board disagree with the arbitrator, by ruling, for example, that the employees involved in the controversy are members of one bargaining unit or another, ... the Board's ruling would, of course, take precedence.... The superior authority of the Board may be invoked at any time.

*Id.* at 272, 84 S.Ct. at 409.

Therefore, *Carey* holds that while unit determination may be arbitrable in the first instance, because the decisions of the NLRB take precedence, and therefore should the initial arbitration award conflict with a later NLRB determination on the same question, the NLRB determination prevails and the initial award must fall. This ruling thus reaffirms the ultimate position of control of the NLRB when dealing with decisions construing the National Labor Relations Act.

Subsequent to *Carey*, the Seventh Circuit has had opportunities to analyze whether NLRB decisions take precedence over arbitration awards. In *Smith Steel Workers v. A. O. Smith Corp.*, 420 F.2d 1 (7th Cir. 1969), the union sought review of a unit classification order of the NLRB and also sought to compel arbitration provided for in the existing collective bargaining agree-

ment with A. O. Smith. This circuit ruled that the district court was correct in dismissing the union's complaint based upon *Carey.*

> Arbitration provides an alternative means of resolving disputes over the appropriate representational unit, but it does not control the Board in subsequent proceedings. . . . The Board's 1967 determination of the appropriate units fully disposed of the question . . . [depriving] the union of any right to recognition as the representative of [the disputed unit]. . . . *The court could compel neither arbitration nor enforce any arbitrator's award in conflict with the Board's order.*

420 F.2d at 7. *See also Local 7–210, Oil, Chemical and Atomic Workers v. Union Tank Car Co.,* 475 F.2d 194 (7th Cir. 1973).

■ Because the facts here are analogous to those in *Smith Steel Workers,* we hold that this court's ruling in *Smith Steel Workers* controls the disposition of the instant action. As in *Smith Steel Workers,* the dispute herein arose out of a disagreement between the employer, the IAM, and the Teamsters Unions as to which one of the unions should represent the Bedford Park facility mechanics. Also, in contrast to *Carey* where arbitration was ordered by the Court, in *Smith Steel Workers* like the instant case, before arbitration was sought there had been an initial determination by the NLRB. In a fact situation similar to this, where the NLRB decision is issued prior to an arbitrator's award, "no arbitrator's award exist[s] to which the Board could defer." 420 F.2d at 7. Therefore, since there has been a ruling by the NLRB in this case on the issue of unit clarification, and because we reaffirm that any ruling by the NLRB takes precedence over any potential decision by an arbitrator on the same issue, we decline to compel arbitration of a grievance the substance of which has previously been decided by the NLRB.

■ Because we hold that a previous NLRB decision takes precedence over potential arbitration awards arising out of the same issue addressed by the NLRB, the final question to be decided in this appeal is whether the decision by the NLRB in this case disposes of the issues which gave rise to the grievance. We hold it does.

As indicated above, on June 5, 1981, the IAM union filed a petition for representation with the NLRB seeking a representation election concerning the disputed unit (mechanics) at the Bedford Park facility. On September 18 of 1981, a decision by the regional director of the NLRB denied IAM's representation petition and ordered an election on October 30, 1981 at the Bedford Park facility. This finding by the regional director of the NLRB that the mechanics constituted a separate unit was a sufficient determination that accretion of IAM's contract concerning the Yellow Freight employees at the Bedford Park facility was not required. Indeed, the regional director in his decision rejected IAM's position and indicated that "[i]t is the opinion of the undersigned, and I find, that there is no present written or oral collective bargaining agreement between the parties which constitutes a bar to a present determination of representation." Therefore, we hold that the regional director's decision that the mechanics employed by Yellow Freight at the Bedford Park terminal do constitute a separate and distinct unit is sufficient to dispose of IAM's grievance.

We AFFIRM.