**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**AMERICAN PRINTERS AND LITHOGRAPHERS, Respondent.**

No. 85–2795.

United States Court of Appeals, Seventh Circuit.

Argued April 8, 1986.

Decided May 26, 1987.

Frederick Havard, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D.C., for petitioner.

William S. Ryza, Pop, Ballard, Shepard & Fowle, Ltd., Chicago, Ill., for respondent.

Before COFFEY and FLAUM, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

The petitioner National Labor Relations Board (the "Board") in this action seeks enforcement of its bargaining order issued to respondent employer, American Printers and Lithographers ("American Printers"). American Printers has responded with a cross-petition that asks us to deny enforcement and vacate the order. American Printers argues that the Board erred in its determination that the pressroom floor helpers were an appropriate unit to add to the existing bargaining unit, which includes lithographic pressroom workers of several employers in a multiemployer bargaining unit.

We uphold the Board's determination of the appropriate unit and therefore grant the petition for enforcement of the bargaining order and deny American Printer's petition for review.

I

On June 4, 1984, the Graphic Communications International Union, Local No. 458, filed a petition seeking certification as the collective bargaining representative of floor helpers in the pressroom at American Printers. The other employees in the pressroom were already represented by the Union in a multiemployer bargaining unit. The floor helpers in the pressroom and in the other departments of the American Printers plant were unrepresented. A Hearing Officer of the NLRB presided at a hearing regarding the petition, and following the hearing the Regional Director of the NLRB ordered a self-determination election among the pressroom floor helpers to determine if they wished to be included in the multiemployer bargaining unit already represented by the Union or if they wished to continue to be unrepresented.[1] Presently general pressroom helpers similar to those at American Printers are represented by the Union at some, but not all, of the other employers' facilities within the multiemployer bargaining unit.

In the ensuing election a majority of the pressroom floor helpers voted to join the existing multiemployer bargaining unit. The Regional Director issued a "Certification of Results of Election," which certified that the pressroom floor helpers had indicated their desire to be added to the extant bargaining unit. The Union thereupon requested bargaining, and American Printers declined to recognize the Union as the representative of the pressroom floor helpers on the grounds that the direction of elec-

---

1. Prior to certifying that the results of the election indicated that the pressroom floor helpers desired to join the existing bargaining unit, the Regional Director had issued an erroneous certification that had certified the pressroom floor helpers as an independent bargaining unit. This erroneous certification was withdrawn by the Regional Director and the proper certification adding the pressroom floor helpers to the existing bargaining unit was then promulgated. It is the final certification of results that is at issue here, and the earlier withdrawn certification has no bearing on the substantive issues on appeal.

tion and the subsequent certification were based on an inappropriate bargaining unit.

The Union filed a charge with the NLRB alleging that American Printers's refusal to bargain constituted an unfair labor practice within the meaning of sections 8(a)(1) and 8(a)(5) of the National Labor Relations Act (codified at 29 U.S.C. §§ 158(a)(1), 158(a)(5)). The Regional Director issued a complaint based upon this charge and the parties filed a joint motion to transfer the proceeding to the Board without a hearing, relying solely on the stipulated record. The Board delegated its authority to a three-member panel, which found American Printers had refused to bargain with the employee's duly authorized representative, and entered a bargaining order. The Board petitions this court to enforce the Board's bargaining order, and American Printers has filed a cross-petition asking us to deny enforcement and to vacate the order. The Graphic Communications International Union, AFL–CIO, Local 458, has filed a brief in support of the Board's petition for enforcement.

## II

 American Printers attacks the Regional Director's determination of the bargaining unit, upheld by the Board, along two lines of argument. American Printers first contends that the pressroom floor helpers did not have a community of interest with the other already represented lithographic workers, but instead had a community of interest with other floor helpers at the American Printers facility in question. American Printers also contends that

even if the pressroom floor workers were correctly determined to have a community of interest with the other pressroom workers, the appropriate election unit was all the pressroom workers at all of the employers' facilities represented by the multiemployer representative, the Chicago Lithographer's Association ("CLA").[2] In reviewing both of these claims regarding the Board's determination of the appropriate bargaining unit, we are constrained to uphold the Board's determination if it is supported by substantial evidence in the record. *South Prairie Construction Co. v. Local No. 627*, 425 U.S. 800, 805, 96 S.Ct. 1842, 1844–45, 48 L.Ed.2d 382 (1976); *Packard Motor Car. Co. v. NLRB*, 330 U.S. 485, 491, 67 S.Ct. 789, 793, 91 L.Ed. 1040 (1947); *NLRB v. Indianapolis Mack Sales & Service, Inc.*, 802 F.2d 280, 283 (7th Cir.1986); *see also NLRB v. Action Automotive, Inc.*, 469 U.S. 490, 496–97, 105 S.Ct. 984, 988–89, 83 L.Ed.2d 986 (1985). The Board carries the ultimate responsibility under the National Labor Relations Act for determining the appropriate bargaining unit, *see* 29 U.S.C. § 159(b); *South Prairie Construction Co.*, 425 U.S. at 805, 96 S.Ct. at 1844–45; *Packard Motor Car. Co.*, 330 U.S. at 491, 67 S.Ct. at 793, and this is as true in multiemployer bargaining units as in any other, *South Prairie Construction Co.*, 425 U.S. at 805, 96 S.Ct. at 1844–45; *NLRB v. Truck Drivers Local No. 449*, 353 U.S. 87, 96, 77 S.Ct. 643, 647, 1 L.Ed.2d 676 (1957).[3] In each case the Board looks to the bargaining history and the "community of interest," or lack thereof, to fashion an appropriate bargaining unit. *E.g., Indianap-*

2. In its petition for review in this court American Printers has also challenged the Board's action under 29 U.S.C. § 159(c)(5). This claim was not, however, raised before the Board and therefore we cannot consider it; American Printers did not even claim, much less establish, any extraordinary circumstances that would justify waiving the statutory waiver rule. *See* 29 U.S.C. § 160(e); *see also, e.g., NLRB v. Affiliated Midwest Hospital, Inc.*, 789 F.2d 524, 533 (7th Cir.1986); *NLRB v. Cutting*, 701 F.2d 659, 670 (7th Cir.1983).

3. 29 U.S.C. § 159(b) provides in relevant part: The Board shall decide in each case whether, in order to assure to employees the fullest

freedom in exercising the rights guaranteed by this subchapter, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof....

While multiemployer units are not mentioned explicitly it is well settled that such units may be appropriate, *e.g., NLRB v. Truck Drivers Local No. 449*, 353 U.S. 87, 96, 77 S.Ct. 643, 647, 1 L.Ed.2d 676 (1957), and the practice has long been recognized as common in several industries, *id.; see also Charles D. Bonano Linen Service v. NLRB*, 454 U.S. 404, 408–10 & n. 5, 102 S.Ct. 720, 723–24 n. 5, 70 L.Ed.2d 656 (1982).

*olis Mack Sales & Service, Inc.,* 802 F.2d at 283. In making a determination regarding multiemployer representation the Board (and an appellate court on review) looks on a case-by-case basis to the duties of the employees, the bargaining history, and the controlling collective bargaining agreement, if any, and makes its decision in light of the congressionally established statutory policies of the labor laws. *See, e.g., NLRB v. Johnson Sheet Metal,* 442 F.2d 1056, 1060 (10th Cir.1971); *NLRB v. Miller Brewing Co.,* 408 F.2d 12, 15 (9th Cir.1969); *Retail Clerks Union v. NLRB,* 330 F.2d 210, 212–16 (D.C.Cir.1964); *St. Lukes Hospital,* 234 N.L.R.B. 130, 130 (1978); *Chrysler Corporation,* 173 N.L. R.B. 1046, 1047 (1968).[4]

A. *The Pressroom and Other Floor Helpers at the American Printers Facility*

■ The Regional Director's decision directing an election provides a detailed set of findings regarding the duties of American Printers's represented lithographic pressroom workers, the floor helpers within the pressroom, and the other floor helpers in other departments at American Printers. These findings rest on significantly more than substantial evidence in the record to support the conclusion, affirmed by the Board, that the pressroom floor helpers had the community of interest with the other lithographic pressroom employees necessary to justify their addition to the bargaining unit, should they so choose in an election.

The Regional Director's findings specifically established that the lithographic pressroom floor helpers regularly performed work substantially related to the work performed by the already represented lithographic pressroom employees. The floor helpers take direction in performing their daily tasks from members of the already represented lithographic pressroom unit. Except on rare occasions when the floor helpers are assigned to other units to make up for absentees they perform all their work with the pressroom unit. Specifically, they arrange material into proper loads for the presses, "turn loads" by transporting and arranging material to be printed on the other side, "air" the loads so they may dry, and load them onto skids for delivery to other departments. They also perform various tasks related to the press machinery itself: they clean dampers and grain rollers by placing them into racks and scrubbing them with brushes after they are removed by unit members; they place bars around cylinders enclosed by rubber blankets to secure the cylinders for mounting on the presses; they tie sleeves onto rollers to ready them for the presses; and they sometimes assist the regular unit members in washing the presses. When the employer is short a regular unit member, a floor helper is assigned to one of the lowest regular unit positions, and these assignments are made once or twice a week. On one shift the lowest level regular unit members also fill in for absent floor helpers when needed.

The Regional Director also found that one-third to one-half of the represented pressroom employees were promoted from positions as pressroom floor helpers, and that none of the represented employees were promoted directly from floor helper positions in other departments. The pressroom floor helpers are under the same supervisory management within the facility as are the represented employees. The pressroom superintendent interviews appli-

---

**4.** Unequivocal consent of the parties to a bargaining agreement is required before the NLRB will recognize a multiemployer bargaining unit as appropriate. *E.g., NLRB v. New York Typographical Union,* 632 F.2d 171, 183 (2d Cir. 1980); *McAx Sign Co. v. NLRB,* 576 F.2d 62, 66–67 (5th Cir.1978), *cert. denied,* 439 U.S. 1116, 99 S.Ct. 1021, 59 L.Ed.2d 75 (1979). There is no contention in this case that any of the parties had not consented to the multiemployer bargaining unit. The element of consent in any case relates only to the formation of the unit and not to the "scope of the duty to bargain once the unit is formed." *Steamship Trade Association of Baltimore,* 155 N.L.R.B. 232 (1965). "To hold otherwise, would lodge all authority over the composition of the unit in the parties and, in effect, deprive the Board of its duty under Section 9 to decide in each case the appropriate unit that will assure to employees the fullest freedom in exercising the rights guaranteed by the Act." *Id.*

cants for floor help positions and makes shift assignments for both regular unit members and the floor helpers. The press-room floor helpers' daily job assignment tags are hung on a board with those of the regular unit. Vacation schedules for the pressroom floor helpers are determined by the pressroom's unit supervisors and approved by the pressroom superintendent. Floor helpers in other departments are not under this pressroom supervisory management.

The Regional Director also found that some floor helpers in the lithographic pressroom department assist regular unit members in "pre-lithographic work" in a preparatory room. They work closely with the regular unit employees, performing primarily stock handling tasks. The supervision of the preparatory room is distinct from that of the pressroom or any other department. The regular unit employees in the preparatory room are required to complete the apprenticeship and training programs required by the collective bargaining agreement.

The Regional Director also found that the duties of the pressroom floor helpers were distinct from the duties of floor helpers in other departments. While all floor helpers are often involved in stock handling of one sort or another the pressroom floor helpers were the only employees to perform the various tasks unique to the pressroom, except on the rare occasions where short staffs required assignment of a non-press room floor helper to the pressroom. Floor helpers from other departments substituting in the pressroom were not assigned tasks regularly performed by the already represented lithographic pressroom employees, as the regular pressroom floor helpers were from time to time.

These findings of the Regional Director garner ample support from the record, especially from the hearing testimony. They clearly establish that the pressroom floor helpers had a distinct community of interest with the rest of the pressroom lithographic staff, who were already represented. They also clearly reveal that the pressroom floor helpers' functions were significantly different from those of floor helpers in other units and departments at American Printers, thus justifying the Regional Director's decision to place other floor helpers outside of the unit composed of pressroom floor helpers. It is common for the Board to find communities of interest and to sustain bargaining units in similar situations within the lithographic industry. *See, e.g., George Rice & Sons,* 212 N.L.R.B. 947 (1974); *Weyerhauser Co.,* 134 N.L.R.B. 1381 (1961). Thus we find no merit in the challenge regarding the relationship of the pressroom floor helpers to the represented lithographic staff and to other floor helpers at American Printers.

B. *The Multiemployer Bargaining Unit*

American Printers claims that even if the pressroom floor workers had a sufficient community of interest with the lithographic pressroom staff at that facility to qualify as a bargaining unit, the Board erred in failing to include in the unit all similarly situated unrepresented pressroom workers employed by other employers who were represented by the Chicago Lithographer's Association. American Printers argues that if the Board certifies an expansion to a multiemployer bargaining unit, it must certify expansion to all similarly situated employees throughout the multiemployer unit.

■ This challenge fails to consider the Board's reasoned interpretation of the bargaining history and the collective bargaining agreement. This history and the bargaining agreement itself provide substantial evidence to support the Board's position that general pressroom employees, such as the pressroom employees here, can be added to the multiemployer bargaining unit on an employer-by-employer basis.[5]

---

5. The two pertinent provisions of the collective bargaining agreement are in the section of the agreement entitled "Recognition" and provide in pertinent part:

1.1(a) The employer recognizes the Union as the exclusive representative, for the purpose of collective bargaining with respect to rates of pay, hours of employment, and other conditions of employment, of all employees per-

The Board's position essentially boils down to a finding that the Union and the employers of the Chicago Lithographers Association intended multiemployer bargaining in general for all lithographic pressroom employees, but in the case of general pressroom workers intended inclusion in the multiemployer bargaining unit on an employer-by-employer basis.

■ These two consensual agreements are admittedly somewhat ambiguous and theoretically they may overlap-it is unclear whether the parties recognized general pressroom workers as part of the larger group of lithographic pressroom workers referred to as the represented employees in the collective bargaining agreement. However, this ambiguity fails to support American Printers in its argument against enforcement. It is possible that the record in the case might have allowed the Board to find appropriate a unit consisting of all the unrepresented pressroom workers throughout the multiemployer bargaining group. But even if such a unit would have been *an* appropriate unit, that fact does not undermine the Board's decision to allow election in *another* appropriate unit. It is crucial to remember that the substantial evidence standard we apply on review requires only that the Board find *an* appropriate bargaining unit, not that it determine the *most* appropriate unit. Thus showing that there were other conceivably appropriate units will not defeat the Board's choice of a bargaining unit. A challenger must show that the Board's choice was itself an inappropriate unit. *See, e.g., NLRB v. Indianapolis Mack Sales & Service, Inc.,* 802 F.2d 280, 283–85 (7th Cir.1986); *see also Joseph E. Seagram & Sons,* 101 N.L.R.B. 101, 103 (1952) (choosing an appropriate unit after noting more than one unit to be appropriate).

■ Second, in a technical 8(a)(5) proceeding to review a representation decision of the Board, it is the Board's responsibility to exercise its expertise in interpreting ambiguities in bargaining histories and agreements, and, as we have noted above, it is our responsibility to respect those decisions insofar as they are supported by substantial evidence. Here the distinction drawn between the two groups in the collective bargaining agreement suggests treatment on a multiemployer basis for most lithographic pressroom employees but treatment on an employer-by-employer basis for pressroom floor helpers, who are among the "General Pressroom Workers" of the collective bargaining agreement. This distinction in the agreement is supported by the bargaining history, which reveals that these general employees are recognized as part of the regular unit by some employers and not by others. Thus substantial evidence, garnered from the agreement and the bargaining history established in the record before the Board, supports the Board's determination that this unit is an appropriate bargaining unit.

American Printers suggests that this decision by the Board alters or abandons previous Board policy with regard to the expansion of multiemployer bargaining units. This contention is without merit. It is true that the Board's stated policy is that:

An established bargaining history on a multiemployer basis will determine the scope required for a unit of previously unrepresented employees if those employees are in excluded fringe classifications which otherwise lack homogeneity, cohesiveness, or separate indentity, and are merely residual to the main body of employees in the established unit.

*St. Luke's Hospital,* 234 N.L.R.B. 130, 130–31 (1978) (quoting with approval *Pacific Drive-In Theatres Corp.,* 167 N.L.R.B. 661, 661 (1967)); *accord Los Angeles Statler Hilton Hotel,* 129 N.L.R.B. 1349, 1351–52 (1961). Thus if a lack of cohesiveness exists in an unrepresented group "merely residual" to the established multiemployer unit, the Board will order any representa-

---

forming lithographic production work in the establishments of the respective employer.

. . . . .

1.5 The Union is also recognized as the exclusive bargaining agent for employees employed as Packers, Bundlers, or Stackers and the General Pressroom Workers in the lithographic pressrooms of Employers who have heretofore recognized the Union in that capacity.

tion for that unit to be made on a multiemployer basis. *See Los Angeles Statler Hilton Hotel*, 129 N.L.R.B. 1349, 1351 (1961).

An appeal to this policy, however, does not undercut the Board's decision in this case. Several reasons are immediately apparent. First, as we have noted above, the pressroom floor helpers here are not a group that lacks "homogeneity, cohesiveness, or separate identity, and are merely residual to the main body of employees in the established unit." The Regional Director here found on substantial evidence that the floor helpers at American Printers "constitute a separate, homogenous group rather than a group residual to the multiemployer lithographic production unit," and thus for the purposes of an election to determine whether to join the multiemployer bargaining unit, the Regional Director was correct to conclude that "scope of the multiemployer unit is not controlling." As we have noted above the testimony clearly indicated that the pressroom floor helpers share the same set of tasks, which distinguishes them from other floor helpers. Their common interests prevent them from being considered a set of employees with differing tasks whose only common attribute is that they are "residual" to a represented group. The Regional Director's finding was well supported.

Second, the "established bargaining history" indicates that the parties here have treated the decisions of pressroom floor helpers on whether to join the multiemployer bargaining unit on an employer-by-employer basis; pressroom floor helpers of some employers are members and those of other employers are not.

Third, the collective bargaining agreement itself continues this arrangement. Thus while the collective bargaining agreement provisions could not bind the Board in its determination of the bargaining unit, *see Carpenters Local No. 1846 v. Pratt-Farnsworth, Inc.*, 690 F.2d 489, 524–25 & n. 17 (5th Cir.1982), *cert. denied*, 464 U.S. 932, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983); *Steamship Trade Association of Baltimore, Inc.*, 155 N.L.R.B. 252 (1965), it does

support the Board's decision to treat the pressroom floor helpers here on a single employer basis. It must be remembered that "the underlying objective of the labor laws is to promote collective bargaining agreements...." *Carey v. Westinghouse*, 375 U.S. 261, 265, 84 S.Ct. 401, 405, 11 L.Ed.2d 320 (1964) (quoting with approval Fuld, J., dissenting in the opinion below in that case, 11 N.Y.2d 452, 458, 230 N.Y.S.2d 703, 706, 184 N.E.2d 298); see also *NLRB v. Strong*, 393 U.S. 357, 361, 89 S.Ct. 541, 545, 21 L.Ed.2d 546 (1969) (the Board may "if necessary to adjudicate an unfair labor practice, interpret and give effect to the terms of a collective bargaining agreement"). Thus this case is substantially different from the many cases cited by American Printers where neither the collective bargaining agreement nor the bargaining history suggested that decisions as to certain groups would be made on an employer-by-employer basis. It more closely resembles those cases where multiemployer or multiplant bargaining have existed and the Board or the courts have found some items to nevertheless require bargaining on a plant-by-plant or employer-by-employer basis. *E.g., Retail Clerks Local No. 1550 v. NLRB*, 330 F.2d 210, 212–16 (D.C.Cir.1964) (there was substantial evidence to show that history of local negotiations with regard to pensions allowed employer to retain its own pension plan where the bargaining agents were understood by the participants to allow individual bargaining and the employer in a timely fashion made clear its refusal to join in multiemployer bargaining with regard to pensions); *Joseph E. Seagram & Sons*, 101 N.L.R.B. 101, 103 (1952) (unrepresented guards at one plant were an appropriate unit despite a multiplant bargaining agreement that covered other employees).

Finally, and most significantly, this case is in its essential facts closely analogous to *Chrysler Corporation*, 173 N.L.R.B. 1043 (1968). In that decision the union sought the direction of an election among unrepresented clerical employees at one of Chrysler's many plants, even though a multiplant

clerical bargaining unit already existed.[6] The Board refused to include all unrepresented clerical employees throughout the multiplant bargaining unit and instead ordered an election to determine if the unrepresented clericals at the plant in question wished to join the multiplant bargaining unit. *Id.* at 1048. The Board in *Chrysler Corp.* first noted that the collective bargaining agreement recognized a "dichotomy between local and central bargaining matters." It then noted that the unrepresented clericals should have a chance to express their preferences regarding representation "in a voting group of the same scope as that in which the represented Twinsburg clericals originally expressed their choice." *Id.* The Board noted that "[i]n our opinion, neither the initial stipulation to their exclusion, nor the merger of the certified unit [by the joining of individual units to form the multiplant unit], should operate to require the employees sought to express their choice in an election which includes like classifications at distant plants, or not at all." *Id.*

The case at bar is very similar. The collective bargaining agreement here also made a distinction between issues to be decided in the larger group and issues to be decided on a local basis. While the record in this case does not indicate the scope of the election in which the represented employees of American Printers first joined the Union, it does indicate that the decisions of whether to join the multiemployer unit have in the past been limited to an employer-by-employer basis throughout the multiemployer unit. The Board has thus in the case at bar not altered any preexisting policy.

### III

In accordance with the foregoing opinion, the Board's petition to enforce the bargaining order is GRANTED and American Print-ers and Lithographers's petition to review and deny enforcement is DENIED.

---

**6.** The contention, implied by American Printers, that *Chrysler* should be distinguished because it involves a multiplant (rather than a multiemployer) unit, is utterly without merit. The Board has long treated the two similarly for all purposes relevant to this decision. *See, e.g., Los Angeles Statler Hilton Hotel,* 129 N.L.R.B. 1349, 1351 (1961).