In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 17-3492

PART-TIME FACULTY ASSOCIATION AT COLUMBIA COLLEGE
CHICAGO,

*Plaintiff-Appellant*,

*v.*

COLUMBIA COLLEGE CHICAGO,

*Defendant-Appellee*.

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:17-cv-513 — **John J. Tharp, Jr.**, *Judge*.

———————————

ARGUED MAY 31, 2018 — DECIDED JUNE 15, 2018

———————————

Before FLAUM, MANION, and HAMILTON, *Circuit Judges*.

FLAUM, *Circuit Judge*. This case involves a labor dispute be-
tween Columbia College Chicago ("CCC" or "the College")
and one of its employee unions, the Part-Time Faculty Asso-
ciation at Columbia College Chicago ("PFAC"), over the rep-
resentation of full-time staff members who also teach part-
time. A Regional Director ("the Director") of the National La-
bor Relations Board ("NLRB" or "the Board") ruled that such

employees were included in PFAC's bargaining unit for the purposes of their part-time faculty duties. An independent arbitrator disagreed. After PFAC filed a federal suit to confirm the arbitration, the district court gave precedence to the Director's decision and vacated the award. We affirm.

## I. Background

### A. Factual Background

CCC operates a private university in Chicago that focuses on the arts and media. It employs approximately 220 full-time faculty, 1,000 part-time faculty, and 700 staff (350 full-time and 350 part-time). PFAC represents part-time faculty for the purposes of collective bargaining. A separate union, the United Staff of Columbia College ("USCC"), represents both full- and part-time staff members.[1] This case involves a dispute over the collective bargaining representation of a unique hybrid category of approximately 50 to 75 employees who work as *both* full-time staff *and* part-time faculty, referred to as "Full Time Staff Who Teach" ("FTST").

The record is divided as to whether, prior to 2015, it was informally understood that PFAC represented FTST in their capacity as part-time faculty. On one hand, at the time of PFAC's original certification in 1998, it sent a written invitation to all part-time faculty, including FTST, to become union members. Following PFAC's certification, CCC also applied the union's wage scale and other contractual benefits (such as tuition remission and sick and personal leave) to both exclusive part-time faculty and FTST. Additionally, PFAC's former

---

[1] PFAC and USCC used to share the same parent union, the Illinois Education Association ("IEA"). However, in 2015 PFAC transferred its affiliation from IEA to the Service Employees International Union ("SEIU").

president and lead negotiator for its first three collective bargaining agreements considered FTST as part of the bargaining unit. At the same time, the President of CCC wrote to a group of FTST in 2014 that "[t]he College has never recognized nor does it agree to voluntarily recognize [FTST] either as members of the PFAC bargaining unit or as an independent union." Moreover, CCC never placed any FTST on the "unit eligibility list" that it provided to PFAC each semester, and it did not accord FTST any seniority within the PFAC bargaining unit. Finally, FTST did not pay PFAC union dues.

The recognition clause in PFAC's collective bargaining agreement ("CBA") is equally equivocal. That clause states:

> The Unit includes *all part-time faculty members who have completed teaching at least (1) semester at Columbia College Chicago*, excluding all other employees, full-time faculty, artists-in-residence, and Columbia College Chicago graduate students, part-time faculty members teaching only continuing education, music lessons to individual students or book and paper making classes, *Columbia College Chicago full-time staff members*, teachers employed by Erickson Institute, the YMCA or Alder [sic] Planetarium, and other individuals not appearing on the Columbia College Chicago payroll, managers and confidential employees, guards, and supervisors as defined in the [National Labor Relations Act].

(emphasis added). FTST are part-time faculty members who have generally taught at least one semester at the College, and thus arguably fall under the scope of the general inclusion

provision. However, FTST also qualify as full-time staff members, which are expressly excluded from representation.

In February 2015, USCC petitioned the NLRB under § 9 of the National Labor Relations Act ("NLRA") to add FTST to its existing bargaining unit via a self-determination election. *See* 29 U.S.C. § 159. The petition was originally dismissed on the ground that FTST were already represented by PFAC. However, that dismissal was later revoked and the petition reinstated so that evidence on the issue could be presented. The Director conducted a twelve-day evidentiary hearing, during which numerous CCC employees testified about terms and conditions of employment at the College.

PFAC intervened in the Board proceedings and claimed that it did *not* represent FTST. It argued that FTST did not share a "community of interest" with other part-time faculty and that their inclusion in the bargaining unit would "destabilize" the existing contract between PFAC and the College. It also asserted that including FTST "would create a minority union to compete with an already established majority union's representation of part-time faculty."

In August 2016, the Director issued a "Decision and Order" that found FTST were included in the PFAC bargaining unit in their capacity as part-time faculty. He ruled that FTST qualified as "dual function" employees because they held "two separate and independent jobs, one as full-time staff and the other as part-time faculty." He further decided that as part-time faculty, FTST were "already included in the PFAC unit … and covered by the PFAC contract." He supported this determination by highlighting relevant witness testimony and pointing to the section of PFAC's recognition clause that states, "[t]he Unit includes all part time faculty members who

have completed teaching at least one (1) semester at Columbia College Chicago." Although he acknowledged that the recognition clause also excludes "full-time staff members," he believed the limitation applied to FTST "only in regard to their capacity as full-time staff." Thus, in his view, FTST were included "within the plain language of the PFAC unit description." Because their faculty job classification "[was] already included in a unit covered by a contract," he concluded that contract bar principles prevented their further inclusion in USCC. Consequently, USCC's self-determination petition was dismissed.

PFAC requested review of the Director's decision by the NLRB. *See* 29 C.F.R. § 102.67(c) ("Upon the filing of a request … the Board may review any action of a Regional Director."). Before the Board issued its final decision, however, CCC began to unilaterally assign retroactive seniority to FTST employees under the terms of the PFAC CBA. In response, PFAC filed a grievance against the College, arguing that CCC's actions violated the CBA because "[n]one of the so-called 'FTST' … ha[d] paid the necessary union dues or agency fees to accrue or maintain seniority in the [PFAC] unit."[2] After CCC denied the grievance, PFAC sought arbitration.

---

[2] Under the PFAC CBA, seniority within the bargaining unit is based upon credit hours taught. However, the CBA also requires all members to "satisfy a financial obligation to [PFAC] as the Unit's exclusive bargaining representative," and failure to pay union dues renders a member ineligible to teach. Based upon these provisions, PFAC argued that, because FTST had never paid union dues, the College should not have unilaterally counted their existing credit history toward seniority.

In its briefs to the arbitrator, PFAC acknowledged that the Director included FTST in the PFAC bargaining unit, and claimed that it was "*not* using [the] arbitration as a collateral challenge to the [Director's] ruling." It further stated that it would "comply with [the decision] and fairly represent the FTST" as long as it remained in effect. Nevertheless, it maintained that the Director "was silent as to how to implement that decision," and "silent as to retroactivity." In the eyes of PFAC, the Director "claimed jurisdiction over a representation dispute, *not* a contract dispute over comparative, intra-unit seniority." It argued that, by extension, "[n]othing in the [Director's] Decision mandate[d] that the Employer (or the Union) give FTST 'back seniority.'" It advocated that, since the Board had not yet issued a final decision, it was best "to allow the administrative process to play out" rather than allow "immediate, unilateral action from the Employer." It sought for the College "to cease and desist such unilateral assignments of seniority and to make whole any [PFAC] unit member who loses work as a result of the improper assignment of seniority/credit history." It argued that such a ruling would "maintain[] the status quo until the administrative process [before the Board was] 'final.'"

The arbitrator issued an award to PFAC on January 11, 2017. His decision, however, went beyond matters of mere seniority and addressed the underlying question of representation. He framed the "core issue presented" as one of "contract law," specifically, the proper interpretation of the recognition clause in PFAC's CBA. He emphasized that his "role and authority" was to "determine the parties' mutual intent lying behind the governing contract language." He concluded that the recognition clause was ambiguous as to the inclusion of FTST. He further determined that, prior to the Director's

decision, the parties' "custom and practice" excluded FTST from the PFAC bargaining unit. As a result, he characterized FTST as "non-members of the bargaining unit." In his view, "because the parties did not mutually intend to include the FTST employees in the bargaining unit … [CCC] violated [the CBA] when it treated those employees as if they were in the unit."

On February 14, 2017, the NLRB denied PFAC's request for review, thereby affirming the Director's dismissal of USCC's petition. *See* 29 C.F.R. § 102.67(g) ("Denial of a request for review shall constitute an affirmance of the regional director's action.").

## B. Procedural Background

On January 23, 2017, PFAC filed suit under the Federal Arbitration Act ("FAA") to confirm the arbitration award and compel CCC to abide by its terms.[3] *See* 9 U.S.C. § 9. CCC responded by filing a cross-motion to vacate the arbitrator's decision, arguing that it directly conflicted with the Director's

---

[3] As the district court highlighted, the arbitration of disputes implicating collective bargaining agreements is also provided for under the Labor Management Relations Act ("LMRA"), *see* 29 U.S.C. § 173, and "as a technical matter, '[i]n seeking to confirm an arbitration award created by virtue of a collective bargaining agreement, recourse is to the LMRA, not the FAA.'" *Part-Time Faculty Ass'n at Columbia Coll. Chi. v. Columbia Coll. Chi.*, No. 17-cv-513, 2017 WL 5192023, at *3 n.4 (N.D. Ill. Nov. 9, 2017) (quoting *Cleveland v. Porca Co.*, 38 F.3d 289, 296 n.5 (7th Cir. 1994)). Regardless, with limited exceptions not relevant here, "arbitration under the LMRA and the FAA are generally subject to the same governing principles." *Id.* (citing *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 298 n.6 (2010); *AT&T Techs., Inc. v. Comm'ns Workers of Am.*, 475 U.S. 643, 650 (1986); *Int'l Union of Operating Eng'rs v. Murphy Co.*, 82 F.3d 185, 188–89 (7th Cir. 1996)).

ruling and thus infringed upon the NLRB's primary jurisdiction over representation issues. CCC further claimed that the arbitrator exceeded his authority because the question of FTST representation was not fairly subsumed within the grievance submitted by PFAC.

The district court ruled in CCC's favor on November 7, 2017. It agreed that the arbitration award contravened the Director's ruling and found that, "where the Board decides a representational issue, that decision necessarily takes precedence over an arbitration award on the same issue." According to the court, because the arbitrator "decided that issue inconsistently with the NLRB's resolution of that question, it cannot stand."

The court further found that the arbitrator exceeded his contractual authority. It believed that PFAC's grievance was "cast in terms focusing on the required method for making seniority determinations, not on determinations about who is eligible for representation by the bargaining unit." As a result, "the issue in the arbitration was not whether FTST were within the PFAC unit, but rather whether the manner in which CCC was assigning work … was consonant with the terms of the CBA." Thus, it concluded that the arbitrator acted improperly by reaching the representation issue.

Finally, the court ruled that the arbitration award contravened the public policy goal of vesting primary jurisdiction over representation issues to the NLRB. In addition, it felt that enforcement of the award would "force CCC, like Odysseus, between Scylla and Charybdis by requiring it to comply with two irreconcilable orders, one requiring the college to recognize FTST as members of the PFAC bargaining unit and the other forbidding it from doing so." This appeal followed.

## II. Discussion

In reviewing a district court's affirmation or vacation of an arbitrator's award, "[w]e accept … findings of fact that are not clearly erroneous and review questions of law *de novo*." *Prostyakov v. Masco Corp.*, 513 F.3d 716, 723 (7th Cir. 2008). Here, the district court found the arbitrator's award unenforceable because: (1) it conflicted with a representational decision of the NLRB; (2) the arbitrator exceeded his authority under the CBA; and (3) it violated public policy. We need not address all three issues here. "[W]e may affirm on any basis that appears in the record," *see Kidwell v. Eisenhauer,* 679 F.3d 957, 965 n.1 (7th Cir. 2012), and the Board's primary jurisdiction offers a sufficient avenue for affirming the district court's ruling.

The Director's representation decision trumps the arbitration award. A series of controlling case law, beginning with the Supreme Court's decision in *Carey v. Westinghouse Electric Corp.*, 375 U.S. 261 (1964), is instructive. In *Carey*, the International Union of Electrical, Radio, and Machine Workers ("IUE") and the employer entered into a collective bargaining agreement covering "production and maintenance employees" at several plants. *Id.* at 262. At the same time, the employer entered into a separate collective bargaining agreement with another union, Federation, covering "salaried, technical" employees. *Id.* IUE filed a grievance against the employer on the grounds that certain employees represented by Federation were performing production and maintenance work that should have been allocated to IUE workers. *Id.* The employer refused to arbitrate the grievance, claiming that the controversy presented a matter of union representation solely for the NLRB. *Id.* at 262–63. In response, IUE sought to compel arbitration in state court. *Id.* at 263.

On appeal, the Court noted that the NLRA "not only tolerates but actively encourages voluntary settlements of work assignment controversies between unions." *Id.* at 266 (citing 29 U.S.C. § 160(k)). Because "arbitration is one method" of settling such disputes, it believed that "grievance procedures pursued to arbitration further the policies of the Act." *Id.* at 265–66. It recognized that some labor disagreements involve not only "work assignment dispute[s]," but also questions of representation, and that in those situations, the NLRA allows the union or employer to petition the Board for relief. *Id.* at 266–67. However, it maintained that "the existence of a remedy before the Board … does not bar individual employees from seeking damages for breach of a collective bargaining agreement in a state court." *Id.* at 268. In other words, "[h]owever the dispute be considered—whether one involving work assignment or one concerning representation—[the Court saw] no barrier to use of the arbitration procedure." *Id.* at 272. Critically, however, the Court provided the following admonition regarding the "superior authority of the Board": "*Should the Board disagree with the arbiter, by ruling, for example, that the employees involved in the controversy are members of one bargaining unit or another, the Board's ruling would, of course, take precedence*." *Id.* (emphasis added).

This Circuit applied *Carey*'s disclaimer to an analogous fact pattern in *Smith Steel Workers v. A. O. Smith Corp.*, 420 F.2d 1 (7th Cir. 1969). There, the Smith Steel Workers Union (the "Union") represented production, maintenance, and office employees at the employer's Milwaukee plant. *Id.* at 5. Another union, the predecessor of the Technical Engineers Association ("TEA"), represented laboratory technicians and assistants. *Id.* Eventually, the unions and employer each filed unit clarification petitions with the NLRB over the classification of

certain employees in the company's automotive laboratory. *Id.* at 5–6. The Board ruled that the employees were included in the TEA unit. *Id.* at 6. Despite the Board's decision, the Union notified the company that it expected the company to recognize the Union, not TEA, as the exclusive bargaining representative of the employees in question. *Id.* When the company refused, the Union filed suit in federal court to compel arbitration. *Id.* On appeal, we affirmed the district court's refusal "to compel arbitration of the unit representation issue after its determination by the Board." *Id.* at 7. Citing *Carey*, we stated that "[a]rbitration provides an alternative means of resolving disputes over the appropriate representational unit, but it does not control the Board in subsequent proceedings." *Id.* We held that "[t]he Board's … determination of the appropriate units fully disposed of the question" and "defined the lawful limits of coverage of the contract which the Union sought to have enforced." *Id.* As a result, "the Board's order deprived the Union of any right to recognition as the representative" of the employees at issue. *Id.* By extension, "[t]he court could compel neither arbitration nor enforce any arbiter's award in conflict with the Board's order." *Id.*

We reached a similar result in *Yellow Freight Systems, Inc. v. Automobile Mechanics Local 701 International Association of Machinists*, 684 F.2d 526 (7th Cir. 1982). In *Yellow Freight*, the employer operated four interstate trucking terminals whose employees were represented by the International Association of Machinists ("IAM"), as well as three "break-bulk" terminals whose employees were represented by the International Brotherhood of Teamsters. *Id.* at 527. When the employer later transferred all of its break-bulk operations (and employees) to a new terminal in Bedford Park, Illinois, IAM filed a petition

with the NLRB seeking a representation election at the facility. *Id.* at 527–28. The Board agreed and directed that an election be held. *Id.* at 528. Following the Board's order, but prior to the election date, IAM informed the company that it intended to proceed to arbitration over whether Yellow Freight violated the parties' collective bargaining agreement when the company refused to apply the agreement to the Bedford Park terminal. *Id.* at 529. The company sought to enjoin the grievance proceeding, arguing that the NLRB's election decision "superseded any possible decision by an arbitrator concerning IAM's grievance." *Id.* We agreed:

> [S]ince there has been a ruling by the NLRB in this case on the issue of unit clarification, and because we reaffirm that any ruling by the NLRB takes precedence over any potential decision by an arbitrator on the same issue, we decline to compel arbitration of a grievance the substance of which has previously been decided by the NLRB.

*Id.* at 530.

Here, the district court properly followed *Carey*, *Smith Steel*, and *Yellow Freight*. The Director's August 2016 decision concluded that FTST were "included in the PFAC unit … and covered by the PFAC contract." The arbitrator's January 11, 2017 award opines on the same issue by characterizing FTST as "non-members of the bargaining unit." Given the primacy of the NLRB's determination, the countervailing arbitration decision cannot stand.

PFAC seeks to avoid *Carey* and its progeny by arguing that the Director's decision was based upon an interpretation of

the CBA rather than a pure application of labor law. PFAC believes that, "in the realm of contract interpretation, arbitrators reign supreme" and therefore the Director's determination "is due no deference." In this particular context, PFAC is incorrect. For one, PFAC misconstrues the scope of the Director's reasoning. True, a limited portion of the Director's Decision and Order reconciles the conflicting language in the CBA's recognition clause. However, this analysis constitutes only two paragraphs in the Director's fourteen page, single-spaced opinion. The remaining sections discuss other, non-contract evidence at length, including the parties' past practices and terms and conditions of FTST employment.

Regardless, the holdings of *Smith Steel* and *Yellow Freight* make no mention of an exception to the general primacy rule in cases where a representational decision partially involves matters of contract. To the contrary, those cases speak in strikingly broad terms. *See Smith Steel*, 420 F.2d at 7 ("Arbitration provides an alternative means of resolving disputes over the appropriate representational unit, but it does not control the Board in subsequent proceedings."); *Yellow Freight*, 684 F.2d at 530 ("*[A]ny* ruling by the NLRB takes precedence over *any* potential decision by an arbitrator on the same issue." (emphasis added)). PFAC's argument accordingly fails.

At bottom, irrespective of the Director's rationale, his decision ultimately addressed USCC's representative petition under § 9 of the NLRA. That section "confers broad discretion on the Board to determine appropriate bargaining units," because "the bargaining unit determination is a representational question reserved in the first instance to the Board." *Carpenters' Local Union No. 1478 v. Stevens*, 743 F.2d 1271, 1278 (9th Cir. 1984); *see also Int'l Union of Operating Eng'rs v. Associated*

*Gen. Contractors of Ill.*, 845 F.2d 704, 709 (7th Cir. 1988) ("Questions of representation, under section nine of the National Labor Relations Act … are matters for the National Labor Relations Board."); *NLRB v. Am. Printers & Lithographers*, 820 F.2d 878, 881 (7th Cir. 1987) ("The Board carries the ultimate responsibility under the National Labor Relations Act for determining the appropriate bargaining unit."). Conferring primacy to the Board's representational decision is therefore in keeping with recognized principles of deference.[4]

The cases cited in PFAC's appellate brief do not alter this conclusion. They only address the relationship between arbitrators and the *courts*, not arbitrators and the NLRB. *See, e.g.*, *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) ("*Judicial review* of a labor-arbitration decision pursuant to such an agreement is very limited. *Courts* are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement." (emphasis added)); *see also United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. TriMas Corp.*, 531 F.3d 531, 535–36 (7th Cir. 2008) ("We must remain mindful, however, of the limited role *we* play at this stage. … If the parties have

---

[4] Both the Supreme Court and this Circuit have held that in other contexts, the Board's interpretation of a collective bargaining agreement is entitled to no special deference. *See, e.g.*, *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 201–03 (1991); *NLRB v. Int'l Bhd. of Elec. Workers, Local Union 16*, 425 F.3d 1035, 1039 (7th Cir. 2005); *NLRB v. Cook Cty. Sch. Bus, Inc.*, 283 F.3d 888, 892 (7th Cir. 2002); *Chi. Tribune Co. v. NLRB*, 974 F.2d 933, 937 (7th Cir. 1992). Those cases, however, deal with the interpretation of a collective bargaining agreement in the adjudication of unfair labor practices, not bargaining unit representation.

in fact agreed to arbitrate their dispute, then they have bargained for *the arbitrator's* interpretation of their contract-not *ours*." (first and third emphases added)). Indeed, neither case references the Board at all. However, "'the relationship of the Board to the arbitration process is of a quite different order' from 'the relationship of courts to arbitrators when an arbitration award is under review.'" *NLRB v. Horn & Hardart Co.*, 439 F.2d 674, 678 (2d Cir. 1971) (quoting *NLRB v. Acme Indus. Co.*, 385 U.S. 432, 436 (1967)). Consequently, PFAC fails to adequately address the central holdings of this Court or similar pronouncements from other circuits. *See, e.g.*, *Chauffeurs, Teamsters & Helpers Local 776 v. NLRB*, 973 F.2d 230, 233–34 (3d Cir. 1992) ("The Board has primary jurisdiction over representational issues. … '[I]f an NLRB determination on the definition of the proper bargaining unit conflicts with an arbitration award, the NLRB decision will prevail.'" (quoting *Eichleay Corp. v. Int'l Ass'n of Iron Workers*, 944 F.2d 1047, 1056 (3d Cir. 1991))); *Cannery Warehousemen, Food Processors, Drivers & Helpers for Teamsters Local Union No. 748 v. Haig Berberian, Inc.*, 623 F.2d 77, 82 (9th Cir. 1980) ("[V]alid Board representation decisions take precedence over conflicting arbitration decisions."); *Gen. Warehousemen & Helpers Local 767 v. Standard Brands, Inc.*, 579 F.2d 1282, 1292 (5th Cir. 1978) ("[I]f the NLRB were to rule contrary to the arbitrator, the Board's ruling would take precedence.").

In short, the arbitration award in this case directly conflicts with a representation decision of the Board. Therefore, it is unenforceable as a matter of law.

### III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.